

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



RECEIVED
NOV 2 9 2021
PRO SE OFFICE

MUSHTAQ AHMAD,

Plaintiff

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION (DOE);
UNITED FEDERATION OF TEACHERS (UFT);
NEW YORK STATE UNITED TEACHERS (NYSUT);
CARMEN FARIÑA, the Chancellor of the NYCDOE, in her
official capacity; MICHAEL PRAYOR, Superintendent of the
Brooklyn Schools in District 73, in his individual and official
capacity; JAMES OLEARCHIK, the Principal of the School of
Democracy and Leadership (SDL), in his individual and
official capacity; EMILIE MITTIGA, Assistant Principal of
SDL, in her individual and official capacity;
CATRINA WILLIAMS, Assistant Principal of SDL, in her
individual and official capacity; CEDRIC HALL, the
Principal of the Eagle Academy for Young Men III (29Q327)
Queens, in his official capacity; BENJAMIN GROSSMAN, the
Principal of Bronx Academy for Software Engineering (BASE)
Bronx, in his official capacity; KATHERINE G. RODI,
Director of DOE's Office of Employee Relations, in her
official and individual capacity; KELLY HOUSTON, Science
Chairperson/Teacher of SDL, in her official and individual
capacity; JULIA FINDLEY, Teacher, and a Delegate to UFT or
NYSUT Delegate Assembly, in her individual and official
capacity; JOHN DOES 1-3; and JANE DOES 1-3,

Defendants.

1:18 CV-03494-WFK-LB

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

Non-Jewish, Non-anti-Islam
and Non-Muslim-Hater
Judge and Court Staff
**Demanded**

## JURISDICTION AND VENUE

1-      This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and

1343 as the cause of action in this pleading arise under 42 U.S.C. §§ 1981, 1983 and 1985, 42

U.S.C.§§2000e to 2000e-17, *et seq.* of Title VII of the Civil Rights Act of 1964: ("Title VII"),

the Age Discrimination in Employment Act of 1967: 29 U.S.C.§§ 621 to 634, *et seq.* (ADEA), §§ 102 and 103 of the Civil Rights Act of 1991, Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, Article VI of the U.S. Constitution, 18 U.S.C. 2511(2)(d), and also because the matters in controversy arise under the Constitution and laws of the United States. This Court has supplemental jurisdiction over Plaintiff's related state law claims and New York City law claims under 28 U.S.C. § 1367(a) because those claims arise out of the same case or controversy as Plaintiff's federal claims.

2-    Venue is proper in this Court under 28 U.S.C. § 1391(b) because one or more of the Defendants reside within this Court's judicial district and a substantial part of the events or omissions giving rise to the claims occurred within the judicial district.

## THE PARTIES

3-    Plaintiff, Mushtaq Ahmad is a 64-year-old, male, naturalized U.S. citizen of Pakistani descent and national origin. He is a Muslim and currently resides in Rockland County, New York.

4-    Defendant, the City School District of the City of New York commonly does business under the name New York City Department of Education (DOE). Board is a school board organized under and existing pursuant to the Education Law of the State of New York and, for all relevant purposes, serves as the government or public employer of all persons appointed to teach within the New York City public schools.

5- Defendant, United Federation of Teachers (UFT) is the labor union that represents most teachers in New York City public schools.

6- Defendant, New York State United Teachers (NYSUT) is a New York state teachers' union, affiliated since 2006 with the American Federation of Teachers (AFT), the AFL-CIO, and the National Education Association (NEA)

7- Defendant, Carmen Fariña was the Chancellor of the DOE, and, pursuant to the Education Law, functioned as the superintendent of schools and chief executive officer of the NYCDOE.

8- Defendant, Michael Prayor was the Superintendent of the Brooklyn schools in District 73.

9- Defendant, James Olearchik was the principal of the School of Democracy and Leadership (SDL).

10- Defendant, Emilie Mittiga was an Assistant Principal of SDL.

11- Defendant, Catrina Williams was an Assistant Principal of SDL.

12- Defendant, Cedric Hall was the Principal of the Eagle Academy for Young Men III (29Q327) Queens.

13- Defendant Benjamin Grossman was the Principal of Bronx Academy for Software Engineering (BASE) Bronx.

14- Defendant Katherine G. Rodi was the Director of DOE's Office of Employee Relations.

15- Defendant, Kelly Houston, was the Science Chairperson/teacher of SDL.

16- Defendant Julia Findley was a teacher and delegate to UFT or NYSUT Delegate Assembly.

## THE FACTS

17- Plaintiff was hired by the DOE in 1999 as a science teacher.

18- Plaintiff worked from September 1999 through September 2004 as a high school chemistry/science teacher in Brooklyn as a DOE employee, and was rated as "Satisfactory," with the additional comment "outstanding teacher," by the principal of Canarsie High School, and was granted tenure in 2004.

19- Plaintiff, after receiving tenure in DOE, resigned on good terms, accepted a job as a chemistry teacher in the Clarkstown Central School District, and moved, along with his family, to Rockland County.

20- In August 2015, Mr. James Olearchik, the principal of the School of Democracy and Leadership (SDL), one of the DOE schools, offered Plaintiff the position of a chemistry teacher in SDL, and made false promises to entice Plaintiff into accepting the position.

21- On or about August 3, 2015, Mr. Olearchik, the Principal of SDL, after interviewing Plaintiff and observing his demo lesson, along with Kelly Houston, on 7/16/15, recommended Plaintiff's hiring as a science teacher at SDL and, via telephone, promised to Plaintiff that he would be teaching all Chemistry classes except one Living Environment Regents prep class.

22- On August 13, 2015, Principal told Plaintiff via telephone that Mr. Tinkle, an investigator at the DOE's Office of Personal Investigation (OPI) had told the Principal about Plaintiff's discrimination lawsuit against East Ramapo Central School District (ERCSD).

23- Plaintiff alleges that in retaliation for Plaintiff's discrimination lawsuit against ERCSD, the Principal, at least ten days after making his recommendation for Plaintiff's hiring after the first demo lesson and interview, required Plaintiff to come back for a second demo on August 14, 2015.

24-    After the strange and unusual second demo lesson, Kelly Houston, a science teacher who had observed both demo lessons, told Plaintiff that it was Assistant Principal Catrina Williams who made Plaintiff come back for the second demo because Catrina Williams did not want to have a Muslim chemistry teacher in SDL.

25-    Plaintiff's hiring was processed by DOE's Division of Human Resources per the Principal's recommendation made on or about August 3, 2015. However, After Plaintiff's hiring, Plaintiff was discriminated against based on his race, religion, and national origin and retaliated against based on his lawsuit against ERCSD.

26-    After Plaintiff's hiring at SDL, AP Catrina Williams said to Plaintiff that it was she (Catrina Williams) who made Plaintiff come back for the second demo because she doubts Muslim people and they (Muslims) are doing wrong things all over the world. At another time, AP Catrina Williams said to the effect to Plaintiff that Plaintiff being a Pakistani Muslim with beard looks like Al-Qaida terrorists and Ms. Williams expressed her belief that Pakistan borders Afghanistan and the Pakistanis support Taliban and Al-Qaida.

27-    The school administration, operating under the color of law, intentionally, and in retaliation for Plaintiff's opposition to discrimination, and on the basis of Plaintiff's race, color, religion, national origin, assigned Plaintiff a classroom, in isolation, on the first floor, while all other SDL teachers and administrators were on the third floor of the HS campus.

28-    The school administration, operating under the color of law, intentionally, and in retaliation for Plaintiff's opposition to discrimination, and on the basis of Plaintiff's race, color, religion, national origin, targeted and treated Plaintiff differently from others and did not provide even an eraser for the Blackboard in the classroom Plaintiff was assigned to in isolation on the

first floor, while all of the classrooms on the third floor were equipped with either a whiteboard or SMART board, and the teachers therein were provided with school supplies.

29- Principal Olearchik, operating under the color of law, intentionally, and in retaliation for Plaintiff's opposition to discrimination, and on the basis of Plaintiff's race, color, religion, national origin, did not keep his promise of giving Plaintiff all Chemistry classes except one Living Environment Regents prep class. On the contrary, the principal gave Plaintiff two Chemistry classes, two repeaters' Living Environment classes, and one regular Living Environment class during the first semester. And in the second semester, Plaintiff was given only one Chemistry class, two repeaters' Living Environment classes, and one Ecology/General Science class.

30- The principal, who enticed and allured Plaintiff in though false promises, operated under the color of law, intentionally, with discriminatory intent and in retaliation for Plaintiff's opposition to discrimination, and on the basis of Plaintiff's race, color, religion, national origin, compelled and forced Plaintiff to teach out of his license area, and made Plaintiff the only teacher having all repeaters' Living Environment classes. No other teacher, none from the principal's race (Caucasian), got a Living Environment repeater class or multiple sections of such.

31- Majority of the repeating students were from AP Catrina Williams' and Julia Findley's previous year's classes. Principal did not rate them (AP Williams and Julia Findley) "Ineffective" or "Developing," but, operating under the color of law, intentionally, and in retaliation for Plaintiff's opposition to discrimination, and on the basis of Plaintiff's race, color, religion, national origin, rated Plaintiff as "Ineffective" or "Developing,."

32- Plaintiff was probably the only teacher who taught in the content area during the first period, designated as "1 Circle," and it was only thirty minutes long. Plaintiff's first-period Chemistry class was scheduled for only thirty minutes daily, four days a week with built-in labs -- no separate lab period. Plaintiff complained to the Principal and Assistant Principals that the thirty minutes daily during the first period, but only for four days per week (roughly forty-five hours annual instructional time after deducting twelve hundred lab minutes mandated by NYSED) was not enough to cover the Chemistry curriculum and the students were set for failure. The principal did not take any corrective measure.

33- AP Catrina Williams and Julia Findley, operated under the color of law, intentionally and with discriminatory intent, ordered the Plaintiff to stay away (hate) Caucasian administrators, teachers, and other staff because the principal did nothing against Caucasian Kelly Houston when she used in her classes an article containing highly controversial and racist material, and the teachers, students and community activists filed complaints against Ms. Houston. Plaintiff reported the said incident to the school principal via email.

34- Operated under the color of law, intentionally, with discriminatory intent and in retaliation for Plaintiff's opposition to discrimination, and on the basis of Plaintiff's race, color, religion, national origin, the school administration, coached, manipulated, organized, instructed, and used students against Plaintiff. AP Catrina Williams and AP Emilie Mittiga brought students to curse at, harass and intimidate Plaintiff, and did nothing to stop the students from cursing, nor took any disciplinary action against the students who cursed at, harassed and intimidated Plaintiff in the presence of two Assistant Principals.

35- Julia Findley encouraged and allowed a student to make threats and throw a solution of chemicals at Plaintiff. Furthermore, she did not stop the student from throwing chemicals and

did not even tell the student not to assault Plaintiff and make threats to him. However, Julia Findley smirked and took two students, out of the classroom, to the Dean's office, wrote a statement against Plaintiff and helped the students to write statements against Plaintiff. No one from the administration took any action against Julia Findley.

36- Operating under the color of law, intentionally, with discriminatory intent and in retaliation for Plaintiff's opposition to discrimination, and on the basis of Plaintiff's race, color, religion, national origin, the school principal took no action against Julia Findley for not doing her duty of team-teaching with Plaintiff and for staying out of the classroom.

37- Julia Findley asked other students in the school to write statements against Plaintiff and told them that she did not want to see a Muslim teacher in SDL. The principal was informed about it, but he took no action against Julia Findley. Rather, he met with students and did witnesses coaching.

38- Operating under the color of law, intentionally, with discriminatory intent and in retaliation for Plaintiff's opposition to discrimination, and on the basis of Plaintiff's race, color, religion, national origin, the school principal threatened Plaintiff of dire consequences if Plaintiff did not do, (in addition to his own work), the work of his team-teaching partners, Julia Findley, and AP Williams. Julia Findley and AP Williams refused to agree to any of the team-teaching models identified by the United Federation of Teachers (UFT) and that are posted on the UFT's website. The principal compelled and forced Plaintiff to do his part/share and the parts/shares of his team-teacher partners, Julia Findley, and AP Williams. The principal took no action against Julia Findley and AP Williams and treated Plaintiff differently than others on the basis on the basis of Plaintiff's race, color, religion, and national origin.

39-    When Plaintiff complained to the principal that his team-teachers [Julia Findley and AP Williams] were not doing their fair share of teaching, then the principal, operating under the color of law, intentionally, with discriminatory intent and in retaliation for Plaintiff's opposition to discrimination, and on the basis of Plaintiff's race, color, religion, national origin, told Plaintiff to do all the work or face dire consequences.

40-    AP Williams, AP Mittiga and Principal Olearchik operating under the color of law, intentionally, with discriminatory intent and in retaliation for Plaintiff's opposition to discrimination, and on the basis of Plaintiff's race, color, religion, national origin, made the work environment hostile and unsafe for Plaintiff due to his race, religion, and national origin. The administrators took no action against the students who cursed at Plaintiff, made threats to Plaintiff, used "F" words about Plaintiff's wife, stole DOE property from Plaintiff's classroom in the presence of Plaintiff and removed resources from Plaintiff's classroom. However, on the other hand, when students did anything negative in any Caucasian teachers' especially Kelly Houston, classes, then the students were required to apologize to the Caucasian teachers. When students disrespected a teacher from the principal's Caucasian race, then students were required to apologize but, on the other hand, students were coached and brought by the school administration to curse at the Plaintiff who is Asian Muslim. This disparate treatment of Plaintiff was on the basis of Plaintiff's race, religion, and notational origin.

41-    On behalf of the school administration, a Caucasian Dean from the SDL Dean's Office, almost every school day, published students' names, their infractions, suspension, and the new locations of the students during suspensions. This publication was sent to all SDL staff members through the SDL global e-mail system. The principal did not take any disciplinary action against that Caucasian Dean. However, on the other hand, the principal put a disciplinary letter of verbal

abuse in Plaintiff's personnel file when Plaintiff mentioned two students' names in a Do Now activity and distributed papers with the two students' names on it to only three students of the same lab group. Operating under the color of law, intentionally, with discriminatory intent and in retaliation for Plaintiff's opposition to discrimination, and on the basis of Plaintiff's race, color, religion, national origin, the school principal treated Plaintiff disparately.

42-     In violation of the Collective Bargaining Agreement (CBA), Plaintiff was forced by the school administrators to work during his duty-free lunch period, preparation period, and after school. AP Catrina Williams did not stop abusing her administrator powers and continued to order/force Plaintiff work during his lunch period even when the principal told her to stop it. Plaintiff filed and won two grievances and one Annual Professional Performance Review (APPR) complaint against the school administration.

43-     The school administration has doctored and tampered with Plaintiff's personnel file.

44-     Plaintiff in writing opted for the videotaping of his formal observation, and, therefore, requested the videotaping of the lesson. However, the Principal denied that request. Furthermore, SDL administrators did not grant permission to Plaintiff to bring his own video camera and videotape his lesson. The school administration, operated under the color of law, misused their authority, and intentionally did not allow the video taping of the lesson so that the observers can manipulate the observation report to fulfill their intended goal of disparate treatment and discrimination against Plaintiff on the basis of his race, religion, and national origin.

45-     AP Williams made false comments in Plaintiff's formal observation report. All chemistry students' statements attached to Plaintiff's rebuttal to the said observation report prove AP

Williams wrong and that she had intentionally targeted Plaintiff on the basis of his race, religion, and national origin.

46-    To get rid of Plaintiff's rebuttal, and due grievance, principal Olearchik and AP Williams, working under the color of law, abused their authority, intentionally and willfully lied, and forced Plaintiff to sign the observation report again, which Plaintiff had previously signed, rebutted, and grieved.

47-    SDL administration did not have enough lab aprons for all chemistry students. When Plaintiff brought the safety hazard issue to the principal's attention, then the principal ordered Plaintiff not to do Chemistry labs with his students. The principal did not buy lab aprons and refused to allow students to complete their lab experiences required by the New York State Board of Regents. That was a deliberate attempt of the principal to make more students of Plaintiff ineligible to take the NYS Chemistry Regents, let others fail, and then use the data against Plaintiff.

48-    The principal, unlawfully and against the CBA, pressured Plaintiff to give a year-end passing grade in a chemistry class to a student who was excessively absent, did not have enough labs, and was missing homework, quizzes, and tests. Furthermore, when Plaintiff did not give that student a passing grade, the student cursed at Plaintiff in front of AP Mittiga. The AP did not tell the student not to curse, and neither the AP, nor the principal took any action against the student. In fact, the racially motivated school administration intentionally and deliberately encouraged students to create hostile, intimidating and scary environment for the Plaintiff.

49-    A student was coached, helped, and provided support by Ms. Findley and AP Williams to disobey, curse, and attack Plaintiff on the basis of Plaintiff's race, religion, and national origin. Plaintiff escaped the attack. The principal, instead of providing a safe work environment, told

Plaintiff to hide teacher's prep room, and then sneak out of the building when students are not around. Plaintiff brought the incident to the UFT's attention and requested to share this information with the superintendent. No action was or has been taken against the student, Ms. Findley, or AP Williams by the principal or the superintendent.

50- May 27, 2016 was declared a fun day at SDL and there were no classes on that day. Plaintiff was scheduled to have some joyful moments by watching a food competition. However, on that day, the Principal of SDL put Plaintiff in isolation in his office and required him to grade mock Chemistry Regents. The school administration kept Plaintiff away from the gatherings inside and outside the school based on Plaintiff's race, religion, and national origin.

51- When Plaintiff gave a shout out to himself for working in isolation on the above-mentioned fun-day, the principal came to Plaintiff's classroom and said that Plaintiff was low-level and the principal himself was way above and beyond that level. Thereafter, the Principal removed Plaintiff from SDL global, which was a global e-mail system to keep all staff informed about the school and students' suspensions. It was only Plaintiff who was kept in the dark, and not allowed to have access to the information other staff had access to. The administration's disparate treatment of Plaintiff was due to Plaintiff's race religion and national origin.

52- On March 23, 2016, Ms. Williams asked Plaintiff's students few content knowledge questions, and the students provided the correct answers. However, Ms. Williams falsely and incorrectly told the students that their answers were incorrect/wrong, When the students stated that the answers they provided were based on Plaintiff's teaching, Ms. Williams stated, "wrong, wrong, wrong," implying that Plaintiff's teaching was wrong. When Plaintiff respectfully told Ms. Williams that the students answers were correct then Ms. Williams looked for the answers in multiple textbooks and found out that the students' answers were correct, and Ms. Williams

lacked knowledge in her own specialty. Right after exposing her lack of knowledge during period 4 on March 23, 2016, Ms. Williams conspired with Ms. Julia Findley and students of period 5 in the hallway. Thereafter, on the same day, in period 5 on March 23, 2016, a student with the support of Ms. Findley cursed at Plaintiff and threw chemicals at Plaintiff. Julia Findley did not say anything to the student. She smirked, instead of co-teaching, left the classroom with two other students, wrote a statement against Plaintiff, and helped the students to write statements against Plaintiff based on Plaintiff's race, religion, and national origin. Plaintiff believes that Ms. Williams operating under the color of law, intentionally and willfully conspired, and preplanned with Principal Olearchik, Julia Findley and some students, and instructed the attack and harm on Plaintiff, and it was solely and disparately done in retaliation for Plaintiff's opposition to discrimination, and on the basis of Plaintiff's race, color, religion, national origin. The school principal did nothing against Ms. Williams and Julia Findley even when the incident was reported to him in writing.

53-     The principal's restorative justice people disparately required Plaintiff to sit in their office for a meeting during his prep period (Plaintiff's contractual right to have a duty-free prep period was violated.), but they did not show up for the meeting. However, two days later, the so-called restorative justice person removed Plaintiff and a student from the ongoing instructional class to have a meeting in the hallway. No adult supervised the students during that meeting. It was a waste of students' learning time and an insult to Plaintiff. The person from the restorative justice was of the same Caucasian race as of the principal and the principal took no action against that person for wasting students' learning time and causing insult to Plaintiff. The January 14, 15, 19 and 20, 2016, lists of suspensions, published with students' names, infractions, and their suspension details, and circulated to all SDL staff through SDL global, stated, in the way of

example, "K and C will both meet with Finnegan to apologize and discuss incident." Ms. Finnigan was from the principal's Caucasian race. On the other hand, the principal took no action against anyone when AP Williams, AP Mittiga, teacher Julia Findley, and teacher Kelly Houston coached students to curse at Plaintiff, harass him, make him fear for his life, run away, and hide in the teachers' lounge.

54-  Julia Findley and AP Williams (scheduled to be Plaintiff's team-teachers) did not agree to co-teach according to any of the six Models of Team Teaching posted on the UFT's website. On numerous occasions, Julia Findlay and AP Williams were present in the school building, but did not bother to come to the classroom to do the required and scheduled team teaching. However, the principal showed favoritism, and disparately and inequitably forced Plaintiff to do all of the work (most of the time throughout the school year), and never required teacher Julia Findley and AP Williams to do their fair share in team teaching.

55-  A student misbehaved in Plaintiff's class, took a copy of the test, without permission went to Kelly Houston, and got help from her to complete the test, Plaintiff marked the student absent because she remained absent throughout the period. At the end of the period, the student returned and took the attendance sheet with her. The student was written up, but, again, no action was taken by the administration even when a student robbed DOE property. In fact, the school administration was encouraging students to do wrong in Plaintiff's classes and harm Plaintiff, and this disparate treatment was in retaliation for Plaintiff's opposition to discrimination, and on the basis of Plaintiff's race, color, religion, national origin.

56-  The school administration, in retaliation for Plaintiff's opposition to discrimination, and on the basis of Plaintiff's race, color, religion, national origin, provided a key to two students to enter Plaintiff's classroom and take away/remove resources from Plaintiff's classroom.

57-    Plaintiff submitted a constructive resignation due to a discriminatory, hostile, and unsafe work environment, but a month later, rescinded and retracted the resignation for the better future of our children and the better future of America.

58-    In retaliation for Plaintiff's complaints of discrimination filed with the school administration and Office of Equal Opportunity (OEO), Plaintiff's opposition to discrimination, and on the basis of Plaintiff's race, color, religion, national origin. Principal Olearchik, working under the color of law and in violation of the Education Law § 3012-d(5)(b)(10), gave Plaintiff a yearly rating of Developing ("D") instead of Effective ("E").

59-    Towards the end of June 2016, Assistant Principal Emilie Mittiga, handed the termination letter over to Plaintiff. At Plaintiff's inquiry, AP Emilie Mittiga informed Plaintiff that a recommendation for Plaintiff's termination was made because of his complaints of discrimination on the basis of his Pakistan descent and Islamic belief. She further stated that the Plaintiff being Pakistan Muslim could not continue to work there (SDL) after making complaints of discrimination.

60-    In retaliation for Plaintiff's complaints of discrimination filed with the school administration and Office of Equal Opportunity (OEO), Plaintiff's opposition to discrimination, and on the basis of Plaintiff's race, color, religion and national origin, Brooklyn High School Superintendent Michael Prayor, who was informed by the UFT District Representative about the unjust and disparate treatment of Plaintiff by the SDL administrators, instead of addressing the matters brought to his attention, without holding a Hearing or even asking Plaintiff a question about his discrimination allegation or teaching services, denied Plaintiff completion of probation, terminated Plaintiff's NYC teaching license, and caused Plaintiff to be "flagged" or "problem coded" in one or more DOE databases. The superintendent's actions were arbitrary,

capricious, irrational, and against the laws discrimination laws that provide protection to the protected class.

61- Plaintiff's complaints of discrimination and disparate treatment were investigated by Camillie Blake from the OSI office of DOE, and Osafo Barker from the Office of Equal Opportunity & Diversity Management of DOE. To this date, DOE has not shared with Plaintiff the findings of Camillie Blake or Osafo Barker.

62- Per the superintendent's letter dated 7/8/16, Plaintiff's termination became effective sixty days from the date of the letter: (probably on 9/6/16). Furthermore, recommendations for the termination of Plaintiff's teaching license(s) were made and Plaintiff's page in DOE's Employee Information System (EIS) was "flagged" or "problem coded."

63- Plaintiff filed an appeal from Superintendent Prayor's decision to deny his completion of probation. The appeal Hearing is known as a C-31 Hearing and it is held at DOE's Office of Appeals and Reviews.

64- On June 19, 2017, Plaintiff appeared for the Hearing.

65- At the Hearing, the Hearing officer (known as the Chancellor's Committee Chairman), told Plaintiff that a person, and "only that person" who was not an employee of the DOE but hired or contracted by DOE from outside, would be doing the audio recording of the proceedings of Plaintiff's Hearing.

66- The Defendants planned and arranged for the recording of the Hearing without notifying Plaintiff, and without getting his consent.

67- In response to Plaintiff's inquiry, the Chancellor's Committee Chairman responded to the effect that at the end of the Hearing, the Plaintiff would be given a form to fill out and to mail it

with a $45 fee to the company hired by the Defendants to record the Hearing. The said company would mail a CD to the Plaintiff at its own convenience.

68- At the Hearing, Plaintiff attempted to audio record the Hearing on Plaintiff's own recording device just to have a duplicate of the recording of the Hearing, the recording Defendants had arranged for, and planned on doing it without notifying the Plaintiff and without getting Plaintiff's consent.

69- The Chancellor's Committee Chairman refused to proceed with the Hearing if Plaintiff recorded it on Plaintiff's recording device.

70- The Chancellor's Committee Chairman canceled the Hearing because Plaintiff would not stop making his own recording of it.

71- DOE's actions, through the Chairman, in refusing to permit Plaintiff to record the Hearing on Plaintiff's own recording device, and then cancelling the C-31 Hearing was arbitrary, capricious, irrational, and in violation of Article VI, Paragraph 2 of the U.S. Constitution, commonly referred to as the Supremacy Clause, and 18 U.S.C. 2511(2)(d), "one-party consent" law. Under a one-party consent law, you can record a phone call or conversation so long as you are a party to the conversation.

72- On or around October 23, 2017, UFT and NYSUT filed a Public Employment Relations Board (PERB) Improper Practice Charge (IPC) # U-36029 and used Plaintiff's name at least four times in that PERB IPC without Plaintiff's consent and denied Plaintiff's requests for a copy of the PERB IPC charge and to this date, neither UFT nor NYSUT has provided any update about the said PERB charge in which they used Plaintiff's name at least four times.

73- On or around February 2, 2018, UFT and NYSUT filed another PERB charge # U-36204 about the DOE's unilateral policy of recordings alleging DOE's violation of Taylors law and improper practice under civil services law §209-a(1)(d).

74- UFT and NYSUT attorney has been seeking adjournments and continued hold on the above-mentioned IPC charges, which has been and are causing Plaintiff irreparable loss and damages. In the pendency of the IPC charge filed by UFT and NYSUT without Plaintiff's permission or consent, DOE is not rescheduling Plaintiff's C-31 Hearing and has refused to investigate Plaintiff's complaint (SCI Case #2017-6336). On November 6, 2017, and thereafter, Adrien Austin, Chief of Staff to the office of DOE's General Counsel via email stated,

> ["Good afternoon,
>
> Thank you for your inquiry. Your complaint (SCI Case #2017-6336) was forwarded to the NYC Dept. of Education's Office of General Counsel and is being held in abeyance until the resolution of your complaints filed with the New York State Commissioner of Education, U.S. Equal Opportunity Commission and Public Employment Relations Board. Thank you for your cooperation in this matter.
>
> Sincerely,
>
> Adrienne Austin, Esq. Chief of Staff
>
> Office of General Counsel
>
> NYC Department of Education"]

75- In 2017, Plaintiff reapplied for a teaching position through DOE's online system.

76- After the review conducted by DOE's Office of Teacher Recruitment and Quality, Plaintiff's application made its way to the "New Teacher Finder" and Plaintiff started to receive invitations to interviews and DOE's job fairs.

77- Assistant Principal Carmel Macklin of DOE's Eagle Academy for Young Men III (29Q327) interviewed and offered Plaintiff a chemistry teacher position on September 1, 2017.

78- 29Q327 school administration properly submitted Plaintiff's nomination, and Plaintiff was hired through a proper procedure.

79- From September 1, 2017, through September 11, 2017, every school day, Plaintiff went to 29Q327, performed his professional duties, and/or taught five classes assigned to him.

80- On September 12, 2017, Katherine G. Rodi, Esq., "Director of the Office of Employee Relations" (according to DOE Outlook), instead of contacting Plaintiff and scheduling an interview for Office of Personnel Investigations (OPI) clearance, contacted the 29Q327 school administration directing them to **NOT** let Plaintiff enter the building because he had been "flagged" and did not have OPI clearance.

81- Ms. Rodi never mentioned in her emails to Plaintiff that he was "flagged," but, instead, specifically denied it.

82- Ms. Rodi put Plaintiff out of work in retaliation for Plaintiff's complaints of discrimination filed with the school administration, OEO, and EEOC charge # 520-2017-02916 filed on June 28, 2017.

83- At the request of Mr. Seth Tinkle, one of the OPI investigators, Plaintiff submitted various requested documents to him via email and in person on September 18, 2017.

84- However, Mr. Cedric Hall, the 29Q327 principal, rescinded Plaintiff's nomination for a chemistry teacher position effective September 19, 2017.

85- OPI then closed the investigation without any determination, and without just cause, because of the withdrawal of Mr. Hall's nomination of Plaintiff on September 19, 2017.

86- The next day, on September 20, 2017, 29Q327 posted a science teacher vacancy online in DOE's system.

| 6251 | QU04 | 77 | Queens | Q327 - Eagle Academy for | Secondary School | Teacher | SCIENCE - GENERAL SCIENCE |
|---|---|---|---|---|---|---|---|

87- Such vacancy remained open at least up to October 16, 2017, which leads to the reasonable conclusion that 29Q327 needed a certified chemistry and or general science teacher, just as some other DOE high schools still do.

88- Plaintiff sent numerous emails to Mr. Hall and others, requesting them to provide the rational, factual basis or reasonable justification for withdrawing the nomination, but as of November 28, 2021, there had been no response.

89- Rescinding the nomination of Plaintiff, after requiring him to do his professional duties and teach five classes up to September 11, 2017, without providing the rational, factual basis or reasonable justification for such action is unjust, unfair, irrational, arbitrary, and capricious. Plaintiff believes and alleges that it was done in retaliation for Plaintiff's EEOC charge # 520-2017-02916 (filed on June 28, 2017) and his discrimination complaints filed with OEO (in 2016).

90- DOE has not paid Plaintiff his earned salary according to the CBA for the total number of days he worked at DOE's Eagle Academy for Young Men III (29Q327) in September 2017. However, DOE has attempted to pay Plaintiff at a Per Diem rate, but not his prorated salary as a regular teacher, for the smaller number of days than the actual days Plaintiff worked. Plaintiff returned the incorrect check to DOE. DOE's and its officers' actions are in retaliation for

Plaintiff's EEOC charge # 520-2017-02916 (filed against DOE on June 28, 2017) and his discrimination complaints filed with OEO (in 2016).

91- On October 13, 2017, Mr. Benjamin Grossman, Principal of Bronx Academy for Software Engineering (BASE), one of the DOE schools, interviewed Plaintiff over the phone and then in person on October 17, 2017.

92- On October 26, 2017, Plaintiff's nomination made by Principal Grossman for a leave replacement substitute teacher at BASE was processed by DOE's Division of Human Resources (DHR).

93- On November 10, 2017, Ms. Katelin Emmons, an OPI investigator, contacted Plaintiff via email to schedule an interview for a background investigation.

94- Plaintiff's interview with Ms. Emmons was scheduled for November 16, 2017, and then postponed until November 30, 2017. However, someone from DHR, without writing or disclosing his/her name or job title, sent an email to Plaintiff, provided "Ref. Number: GX2933217 N229 Withdrawal of Nomination" and informed Plaintiff that (once again) his nomination for employment with DOE was withdrawn and closed effective immediately.

95- On November 29, 2017, Ms. Emmons sent an email to Plaintiff, canceled the November 30, 2017, scheduled interview of Plaintiff, and closed the investigation without any determination, and without just cause, because of the withdrawal of Mr. Grossman's nomination of Plaintiff on November 17, 2017.

96- Once again, the rescission of Plaintiff's nomination by BASE principal Mr. Grossman, just as the rescission of Plaintiff's nomination by 29Q327 principal Mr. Hall, without providing the rational, factual basis or reasonable justification for such action is unjust, unfair, irrational, arbitrary, and capricious. Plaintiff believes and alleges that it was done in retaliation for

Plaintiff's EEOC charge # 520-2017-02916 (filed on June 28, 2017) and his discrimination complaints filed with OEO (in 2016).

97- About early January 2018, Plaintiff, once again, applied online for a teaching position using DOE's online portal. DOE kept Plaintiff's application "UNDER REVIEW" for a few months.

98- DOE's actions of keeping Plaintiff's job application under review for such a prolonged period of time and not letting his job application move to the "New Teacher Finder," without providing the rational, factual basis or reasonable justification for such action was unjust, unfair, irrational, arbitrary, and capricious. Plaintiff believes and alleges that it was done in retaliation for his EEOC charge # 520-2017-02916 (filed against DOE on June 28, 2017) and his discrimination complaints filed with OEO (in 2016).

99- DOE at its https://nyc.teacherssupportnetwork.com/candidate/Home.do webpage, has posted numerous items of false and stigmatizing information, such as the item # "6 State Certification" showing in red "Not Certified" on "12/24/2017" to prevent and bar Plaintiff from getting employment with any DOE school.

100- DOE's action of posting online utterly false and stigmatizing information about Plaintiff to prevent, bar, and block him from getting employment with any DOE school is unjust, unfair, irrational, arbitrary, and capricious. Plaintiff believes and alleges that it was done in retaliation for his EEOC charge # 520-2017-02916 (filed against DOE on June 28, 2017) and his discrimination complaints filed with OEO (in 2016). Consequently, DOE's discrimination against a protected class (Plaintiff) is continuing.

101- Plaintiff alleges that the UFT failed to fulfill its obligation of duty of fair representation and tried to push Plaintiff to sign stipulations for the benefit of the employer (DOE) and its

administrators. Plaintiff further alleges that UFT and NYSUT failed in providing proper representation and processing grievances due to prejudice, hostility, collusion, and conspiracy.

102- The actions set forth were undertaken by DOE and its employees or servants without just cause and on the basis of Plaintiff's race, religion, and national origin, in violation of Title VII of the Civil Rights Act of 1964: 42 U.S.C.§§2000e to 2000e-17, *et seq.* ("Title VII"), 42 U.S.C. §§ 1981, 1983 and 1985, the Age Discrimination in Employment Act of 1967: 29 U.S.C.§§ 621 to 634, *et seq.* (ADEA), §§ 102 and 103 of the Civil Rights Act of 1991,New York State Executive Law §§ 290 to 297 – Human Rights Law – Unlawful discriminatory practices, § 291-Equality of Opportunity-a Civil Right, New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131, Teachers Collective Bargaining Agreement, Due Process Clause of the Fourteenth Amendment of the U.S. Constitution and anti-defamation laws.

103- Plaintiff filed his first EEOC charge # 520-2017-02916 against DOE and UFT Defendants on June 28, 2017, and received a Notice of Right to Sue on March 14, 2018.

104- Plaintiff filed his second EEOC charge # 520-2018-03107 on April 6, 2018, against DOE and received a Notice of Right to Sue on or around May 23, 2018.

105- Plaintiff served Notice of Claims on DOE Defendants and UFT Defendants via email On August 18, 2017. [See 'Exhibit A']

106- On August 30, 2017, Plaintiff served in-person Notice of Claims upon DOE's Defendants through the Comptroller's office and received a stamped copy for proof. Thereafter, Plaintiff went to NYCDOE's legal office located at 100 Church Street and served a Notice of Claims there as well. [See 'Exhibit B']

## FIRST CLAIM FOR RELIEF
### (Claim Under 42 U.S.C. §1981 Against NYC DOE et. al)

107- Plaintiff repeats and realleges the allegations contained in the preceding paragraphs 3-106 as if fully set forth herein.

108- Defendants discriminated and retaliated against Plaintiff in the terms, conditions, and privileges of employment on account of his race and national origin and his opposition to race and national origin discrimination in violation of 42 U.S.C. §1981.

## SECOND CLAIM FOR RELIEF
### (Claim under Title VII, 42 U.S.C. 2000e Against NYC DOE et. al)

109- Plaintiff repeats and realleges the allegations contained in the preceding paragraphs 3-108 as if fully set forth herein.

110- On March 14, 2018, and May 23, 2018, plaintiff received "Notice of Right to Sue" and a dismissal of his charges of discrimination against the NYC DOE et. al from the Equal Employment Opportunity Commission.

111- Plaintiff filed the original complaints in this case on June 28, 2017, and April 06, 2018, and attached a copy of both the "Notice of Right to Sue" thereto.

112- Defendant NYC DOE et. al discriminated and retaliated against plaintiff in the terms, conditions, and privileges of employment on account of his religion, race and national origin and his opposition to race, national origin, and religious discrimination in violation of Title VII of the Civil Rights Act of 1964.

## THIRD CLAIM FOR RELIEF
### (Claim Under 42 U.S.C. §1985 Against NYC DOE et. al)

113- Plaintiff repeats and realleges the allegations contained in the preceding paragraphs 3-112

as if fully set forth herein.

114- Defendant NYC DOE et. al intentionally conspired and colluded against Plaintiff and created hostile work environment in the terms, conditions, and privileges of employment in violation of 42 U.S.C. §1985.

## FOURTH CLAIM FOR RELIEF
### (Claim under 42 U.S.C. §1983 Against NYC DOE et. al)

115- Plaintiff repeats and realleges the allegations contained in the preceding paragraphs 3-114 as if fully set forth herein.

116- Defendant NYC DOE et. al, in violation of 42 U.S.C. §1983 discriminated against and retaliated against plaintiff in the terms, conditions and privileges of employment on account of his religion, race and national origin and his opposition to race, national origin and religious discrimination in violation of Title VII of the Civil Rights Act of 1964.

## FIFTH CLAIM FOR RELIEF
### (Claim 29 U.S.C.§§ 621 to 634, *et seq.* (ADEA) Against NYC DOE et. al)

117- Plaintiff repeats and realleges the allegations contained in the preceding paragraphs 3-116 as if fully set forth herein.

118- Defendant NYC DOE et. al, discriminated against and retaliated against plaintiff on account of his age in violation of the Age Discrimination in Employment Act of 1967: 29 U.S.C.§§ 621 to 634, *et seq.* (ADEA).

## SIXTHTH CLAIM FOR RELIEF
### (Claim under §§ 102 and 103 of the Civil Rights Act of 1991 against NYC DOE et. al)

119- Plaintiff repeats and realleges the allegations contained in the preceding paragraphs 3-118 as if fully set forth herein.

120- Defendant NYC DOE et. al, intentionally discriminated against and retaliated against

plaintiff and intentionally caused harm to him in violation of §§ 102 and 103 of the Civil Rights Act of 1991.

## SEVENTH CLAIM FOR RELIEF
**(Claim under New York State Executive Law §§ 290 to 297 – Human Rights Law against NYC DOE et. al)**

121- Plaintiff repeats and realleges the allegations contained in the preceding paragraphs 3-120 as if fully set forth herein.

122- Defendant NYC DOE et. al, discriminated against and retaliated against plaintiff in the terms, conditions, and privileges of employment on account of his religion, race, national origin and age and his opposition to race, national origin, and religious discrimination in violation of New York State Executive Law §§ 290 to 297 – Human Rights Law.

## EIGHTH CLAIM FOR RELIEF
**(Claim under New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131 Against NYC DOE et. al)**

123- Plaintiff repeats and realleges the allegations contained in the preceding paragraphs 3-122 as if fully set forth herein.

124- Defendant NYC DOE et. al. discriminated against and retaliated against plaintiff in the terms, conditions, and privileges of employment on account of his religion, race, national origin and age and his opposition to race, national origin, and religious discrimination in violation of New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131.

## NINTH CLAIM FOR RELIEF
**(Claim under Due Process Clause of the Fourteenth Amendment to the U.S. Constitution Against NYC DOE et. al)**

125- Plaintiff repeats and realleges the allegations contained in the preceding paragraphs 3-124 as if fully set forth herein.

126-   Defendant NYC DOE et. al, terminated Plaintiff's teaching licenses without a Hearing in violation of Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

## TENTH CLAIM FOR RELIEF
**(Claim under Teachers Collective Bargaining Agreement (CBA) Against NYC DOE et. al)**

127-   Plaintiff repeats and realleges the allegations contained in the preceding paragraphs 3-126 as if fully set forth herein.

128-   Defendant NYC DOE et. al, intentionally violated Collective Bargaining Agreement (CBA) numerous times.

## ELEVENTH CLAIM FOR RELIEF
**(Claim under anti-defamation laws. Against NYC DOE et. al)**

129-   Plaintiff repeats and realleges the allegations contained in the preceding paragraphs 3-128 as if fully set forth herein.

130-   Defendant NYC DOE et. al, posted false information and statements about and against Plaintiff on its webpage in violation of anti-defamation laws.

## TWELVTH CLAIM FOR RELIEF
**(Claim under Duty of Fair Representation Against UFT and NYSUT)**

131-   Plaintiff repeats and realleges the allegations contained in the preceding paragraphs 3-130 as if fully set forth herein.

132-   Defendant UFT/NYSUT failed to fulfill its obligation of duty of fair representation. UFT/NYSUT used Plaintiff's name secretively and surreptitiously at least four times in the PERB Charge # U-36029 without Plaintiff's permission or consent and to this date has been seeking extensions and continued hold on that PERB Charge, has failed to request DOE to reschedule and hold a C-31 Hearing in Plaintiff's Appeal, had tried to push Plaintiff to sign stipulations for the benefit of the employer (DOE) and its administrators. Plaintiff further alleges

that UFT and NYSUT failed in providing proper representation and processing grievances due to prejudice, hostility, collusion, and conspiracy.

## THIRTEENTH CLAIM FOR RELIEF
### (Claim under Title VI, 18 U.S.C. 2511(2)(d) Against NYC DOE et. al)

133- Plaintiff repeats and realleges the allegations contained in the preceding paragraphs 3-132 as if fully set forth herein

134- Defendant DOE's policy about the audio and video recordings of C-31 hearings are not conforming, but rebellious, to the Title VI and 18 U.S.C. 2511(2)(d).

135- Defendant DOE and its Hearing Officer intentionally and willfully violated the U.S. Constitution Title VI and 18 U.S.C. 2511(2)(d).

## FOURTEENTH CLAIM FOR RELIEF
### (Claim under the Equal Pay Act of 1963 (Against NYC DOE et. al)

133- Plaintiff repeats and realleges the allegations contained in the preceding paragraphs 3-135 as if fully set forth herein

134- Defendant DOE has neither paid Plaintiff's salary for the days he worked as a teacher in the Eagle Academy for Young Men III (29Q327) Queens, nor compensated for the won grievances. The Defendant DOE intentionally violated the equal pay act of 1963.

**WHEREFORE**, Plaintiff demands judgment:

(a)     Declaring that the acts and practices complained of herein are in violation of Title VII of the Civil Rights Act of 1964: 42 U.S.C.§§2000e to 2000e-17, *et seq.* ("Title VII"), 42 U.S.C. §§ 1981, 1983 and 1985, the Age Discrimination in Employment Act of 1967: 29 U.S.C.§§ 621 to 634, *et seq.* (ADEA), §§ 102 and 103 of the Civil Rights Act of 1991,New York State Executive

Law §§ 290 to 297 – Human Rights Law – Unlawful discriminatory practices, § 291-Equality of Opportunity-a Civil Right, New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131, Teachers Collective Bargaining Agreement, Due Process Clause of the Fourteenth Amendment of the U.S. Constitution and anti-defamation laws.

(b)     Enjoining and permanently restraining these violations of violation of Title VII of the Civil Rights Act of 1964: 42 U.S.C.§§2000e to 2000e-17, *et seq.* ("Title VII"), 42 U.S.C. §§ 1981, 1983 and 1985, the Age Discrimination in Employment Act of 1967: 29 U.S.C.§§ 621 to 634, *et seq.* (ADEA), §§ 102 and 103 of the Civil Rights Act of 1991,New York State Executive Law §§ 290 to 297 – Human Rights Law – Unlawful discriminatory practices, § 291-Equality of Opportunity-a Civil Right, New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131, Teachers Collective Bargaining Agreement, Due Process Clause of the Fourteenth Amendment and  Title VI, 18 U.S.C. 2511(2)(d)  of the U.S. Constitution and anti-defamation laws.

(c)     Requiring defendant NYC DOE to reinstate plaintiff to the position he held prior to discharge, with all employee benefits incidental thereto; or in the alternative to award front pay.

(d)     Enjoining defendant NYC DOE, upon plaintiff's reinstatement, from discriminating against Plaintiff on the basis of race, national origin, and religion, in the terms and conditions of his employment.

(e)     Ordering and requiring DOE to pay Plaintiff's salary at the present teacher salary rate, not at a substitute rate, for the days he worked in the Eagle Academy for Young Men III (29Q327) Queens.

(f)     Ordering and requiring DOE to pay Plaintiff the dollar amount towards the grievance Plaintiff filed and won about forced labor during his duty-free lunch periods.

(g)     Awarding back pay from NYC DOE to the date of plaintiff's termination.

(h)     Awarding plaintiff compensatory damages from both defendants including, but not limited to, damages for emotional distress.

(i)     Awarding plaintiff punitive damages from defendants; NYC DOE et al.

(j)     Awarding reasonable fees, costs, and expenses.

(k)     Ordering UFT and NYSUT to process plaintiff's grievances and actively pursue them.

(l) Ordering UFT and NYSUT to cease and desist from using its members' name without their consent or permission in any PERB charge.

(m)     Awarding plaintiff punitive damages from defendants UFT and NYSUT for using Plaintiff's name, without his consent or permission, at least four times in a PERB charge and causing to prolong the Hearing of his OAR Hearing.

(n)     Ordering and requiring DOE to amend, change and make its policies conforming to U.S. Constitution Title VI, 18 U.S.C. 2511(2)(d).

(o)     Ordering and requiring DOE and UFT/NYSUT to schedule and hold C-31 Hearing in Plaintiff's Appeal according to U.S. Constitution Title VI, 18 U.S.C. 2511(2)(d); allowing Plaintiff to record the Hearing on his own recording device.

(p)     Granting such other legal and equitable relief as the Court may deem just and equitable.

                                        Respectfully submitted,

Dated: New City, NY
       November 29, 2021

                                        Mushtaq Ahmad (Plaintiff)
                                        10 Parliament Drive
                                        New City, NY 10956
                                        Phone: (845)708-5837
                                        Email: nymushtaq@gmail.com

# Exhibit A

                                   **M Ahmad <nymushtaq@gmail.com>**

## Notice of Claims

**M Ahmad** <nymushtaq@gmail.com>                                    Fri, Aug 18, 2017 at 12:00 PM
To: Chancellor Carmen Fariña <NYCChancellor@schools.nyc.gov>, CGFarina@schools.nyc.gov, Michael Prayor
<mprayor@schools.nyc.gov>, James Heaton <jolearchik@schools.nyc.gov>, emittiga@schools.nyc.gov, "Williams Catrina
(16K455)" <cwillia23@schools.nyc.gov>, "Findlay Julia (18K415)" <jfindla@schools.nyc.gov>, khouston@schools.nyc.gov
Cc: M Ahmad <nymushtaq@gmail.com>

Greetings!

Please find attached a Notice of Claims from Mushtaq Ahmad. Thank you!

Respectfully,
Mushtaq Ahmad
845-304-8981


**Notice of Claims to NYCDOE.pdf**
452K

In the matter of Claims of
Mushtaq Ahmad
-against-

New York City Department of Education (NYCDOE), Farina Carmen (Chancellor), Michael Prayor (superintendent), James Olearchik (former Principal of School of Democracy and Leadership "SDL"), Emilie Mittiga (former Assistant Principal of SDL), Catrina Williams (former Assistant Principal of SDL), Julia Findley (former teacher of SDL), Brian Sturm (former teacher of SDL), Kelly Houston (former teacher of SDL)

**To:** New York City Department of Education (NYCDOE), 65 Court Street, New York, NY 11201

Farina Carmen (Chancellor) - 52 Chambers Street, New York, NY 10007- CGFarina@schools.nyc.gov

**Michael Prayor (superintendent)** - 1830 Shore Boulevard, Brooklyn, NY 11235 - mprayor@schools.nyc.gov

James Olearchik (former Principal of SDL) – address unknown - jolearchik@schools.nyc.gov

Emilie Mittiga (former Assistant Principal of SDL) - New Utrecht High School, 1601 80th St, Brooklyn, NY 11214

Catrina Williams (former Assistant Principal of SDL) - address unknown - cwilliam23@schools.nyc.gov

Julia Findley (former teacher of SDL) - address unknown - jfindla@schools.nyc.gov

Kelly Houston (former teacher of SDL) - address unknown - khouston@schools.nyc.gov

1- **The name and post-office address of claimant** is
Mushtaq Ahmad – 10 Parliament Drive, New City, NY 10956

2- The claimant, Mushtaq Ahmad (hereinafter "Ahmad"), is a male, 60 years old, naturalized American citizen originally from Pakistan, Asian and a Muslim. Effective September 2015, Ahmad rejoined the employ of the New York City Department of Education (hereinafter "NYCDOE") as a science teacher. However, some administrators and employees of NYCDOE conspired and colluded against Ahmad, involved and manipulated students, targeted Ahmad, defamed his character, harassed him, violated collective bargaining agreement (CBA), retaliated and discriminated against Ahmad because of his race, color, age, gender, religion and national origin and wrongfully terminated effective September 2016 and the said discrimination is continuing. The actions set forth above were undertaken without just cause and on the basis of Ahmad's religious beliefs, national origin, gender, age, race, and in retaliation for his complaints of discrimination, and in violation of teachers Collective Bargaining Agreement (CBA), antidefamation laws, the New York State Article 78, the New York State Executive Law, Human Rights Law, § 290 et. seq, as well as 42 U.S.C 2000e, et. seq., Sections 102 and 103 of the Civil Rights Act of 1991, 42 U.S.C. § 1983, 1981, and 1985; breach of confidentiality, the Age Discrimination in Employment Act of 1967 (ADEA) and the Equal Pay Act of 1963 (EPA).

3- **The time when, the place where, and the manner in which the claim arose:** On or about August 3, 2015, Mr. Olearchik, (hereinafter "Principal") the Principal of School for Democracy and Leadership (hereinafter "SDL"), after interviewing Ahmad and observing his demo lesson on 07/16/2015, recommended Ahmad's hiring as a science teacher at SDL and, via telephone, promised to Ahmad that he would be teaching all chemistry classes except one Living Environment regents prep class. On August 13, 2015, Principal told Ahmad via telephone that Mr. Tinkle, an investigator at the NYCDOE's Office of Personal Investigation (OPI) had told him, the Principal, about Ahmad's discrimination lawsuit against East Ramapo Central School District ("ERCSD").

In retaliation of Ahmad's discrimination lawsuit against ERCSD, the Principal, at least 10 days after making his recommendation for Ahmad's hiring after the 1st demo lesson and interview, required Ahmad to come back for a 2nd demo on August 14, 2015. After the strange and unusual 2nd demo lesson, Kelly Houston, a science teacher, told Ahmad that it was Assistant Principal Catrina Williams who made Ahmad come back for the 2nd demo because Catrina Williams did not want to have a Muslim chemistry teacher in SDL.

After Ahmad's hiring at SDL, AP Catrina Williams said to Ahmad that it was she who made Ahmad come back for the second demo because she doubts Muslim people and they (Muslims) are doing wrong things all over the world.

Ahmad was assigned to a classroom on the 1st floor, whereas other teacher and administration were on the 3rd floor. Ahmad's classroom on the 1st floor was equipped with chalkboard but Ahmad was not provided with even the eraser for that chalkboard. All of the classrooms, on the 3rd floor, were equipped with Whiteboard or Smartboard.

Principal did not keep his promise of giving Ahmad all chemistry classes except one Living Environment regents prep class. However, due to Principal's retaliation, Ahmad was compelled/forced to teach out of his license area and Ahmad was the only teacher who was given all living environment repeat classes but no teacher from Principal's race (Caucasian) got Living Environment repeat class or classes.

Most of the repeat students were from Kelly Houston and or AP Williams and Julia Findley's classes. Principal did not rate them (Kelly Houston, AP Williams and/or Julia Findley) ineffective or developing but Ahmad on the basis of age, race, religion and national origin.

Ahmad was probably the only teacher who taught in the content area in the 1st period, called as (1 Circle) and it was only 30 minutes long. Ahmad's 1st period chemistry class was scheduled for only 30 minutes and 4 days a week with built-in labs, no separate lab period. Ahmad complained to the Principal and Assistant Principals about the 30 minutes 1st period only for 4 days (roughly 45 hours annual instructional time after deducting 1200 lab minutes mandated by NYSED) was not enough to cover the chemistry curriculum and the students were set for failure.

The school administration and some school teachers coached, manipulated, organized and used students against Ahmad, based on the race, religion and national origin. AP Catrina Williams and AP Emilie Mittiga brought students to curse at Ahmad, assisted students in putting Ahmad's life in ganger, did nothing to stop the students from cursing or harassing, nor took any disciplinary action against the students who cursed at and harassed Ahmad in the presence of Assistant Principals.

Julia Findley, a co-teacher, on the basis of race, religion and national origin, let a student throw a solution of chemicals at Ahmad, did not stop the student from throwing chemicals, did not even tell the student not to assault Ahmad and make threats to him. However, Julia Findley smirked and took two students, out of the classroom, to the Dean's office, wrote a statement against Ahmad and helped the students to write statements against Ahmad. The Principal, based on the race, religion and national origin took no action against Julia Findley for not doing her duty of team-teaching with Ahmad and for staying out of the classroom. Julia Findley asked other students in the school to write statements against Ahmad and told them that she did not want to see a Muslim teacher in SDL. Principal was informed about it but he took no action against Julia Findley; met with students to do witnesses coaching.

The Principal threatened Ahmad of dire consequences if Ahmad did not do, (in addition to his own work), the work of his team-teaching partners, Julia Findley and AP Williams. Julia Findley and AP Williams refused to agree to any of the team-teaching models identified by United Federation of Teachers ("UFT") and posted on UFT's website. The principal compelled and forced Ahmad to do his part/share and the parts/shares of his team-teacher partners, Julia Findley and AP Williams. Principal took no action against Julia Findley and AP Catrina Williams. When Ahmad complained to the Principal that his team-teachers [Julia Findley and AP Williams] were not doing their fair share of teaching, then the principal told Ahmad to do all the work or face dire consequences.

AP Williams, AP Emilie Mittiga and the Principal Olearchik intentionally made the work environment hostile and unsafe for Ahmad due to his race, religion and national origin. The said administrators took no action against the students who cursed at Ahmad, made threats to Ahmad, used "F" words about Ahmad's wife, stole NYCDOE property from Ahmad's classroom in the presence of Ahmad and removed resources from Ahmad's classroom. However, on the other hand, when students did anything negative in a Caucasian teacher's class, then the students were required to apologize from the Caucasian teacher.

On behalf of the school administration, A Caucasian Dean from SDL Dean's office, almost every school day, published students' names, their infractions, suspension, the new locations of the students during suspensions and those publication were sent to all SDL staff members through SDL global e-mail system. The Principal did not take any disciplinary action against that Caucasian Dean. However, on the other hand, the Principal put a disciplinary letter of verbal abuse in Ahmad's personnel File when Ahmad mentioned two students' names in a Do Now activity and gave that two students name on the Do Now only to the 3 students of the same lab-group. Principal had different rules for people of different races, religion and national origin.

Against the Collective Bargaining Agreement ("CBA"), Ahmad was forced by the school administrators to work during his duty-free lunch period, preparation period and after school. So far Ahmad has won 2 Grievances and 1 APPR complaint against the school administration.

The Principal and AP Williams intentionally lied and forced Ahmad to sign the observation report again, which he has signed, rebutted and grieved, so they can get rid of Ahmad's rebuttal, and grievance. The school administration has doctored and tampered with Ahmad's personnel file.

AP Williams made false comment in Ahmad's formal observation evaluation report. All chemistry students' statements attached to Ahmad's rebuttal to the said evaluation report prove AP Williams wrong and intentional targeting of Ahmad on the basis of his race religion and national origin.

Ahmad opted for the videotaping of his formal observation, demanded for the videotaping but the Principal denied that request and that SDL administrators did not grant permission to the Ahmad to bring his own video camera and videotape his lesson.

SDL administration did not have enough lab aprons for all chemistry students When Ahmad brought the safety hazard issue to the principal's attention then the principal ordered Ahmad not do chemistry lab with his students but did not buy lab aprons and allow students to compete their lab experiences required by the New York State Board of Regents. That was a deliberate attempt of the principal to make more students of Ahmad not be eligible to take the NYS chemistry regent, let them fail and use the data against Ahmad.

The Principal pressurized Ahmad to give a yearly passing grade in a chemistry class to a student who was excessively absent, did not have enough labs, missing homework, quizzes and tests. Furthermore, when Ahmad did not give that student a passing grade, the student cursed at Ahmad in front of an AP. The AP did not tell the student not to curse, and neither the AP, nor the Principal took any action against the student.

May 27, 2016 was a fun day at SDL and there were no classes on that day. Ahmad was scheduled to have some joyful moments by watching food competition. However, the Principal of SDL put Ahmad in isolation in his office and required him to grade mock chemistry regent. The purpose was to keep Ahmad away from the gatherings inside and outside the school, and that was done due to Ahmad's race, religion and national origin. When Ahmad gave shout out to himself for working on the fun day and being seated in isolation, the Principal came to Ahmad's classroom and said that Ahmad was low level and the principal himself was way above and beyond that level. Thereafter, the Principal removed Ahmad from SDL global, which was global e-mail system to keep all staff informed about the school and students suspensions. It was only Ahmad who was kept in dark, not allowed to have access to the information other staff had access to.

A student was coached helped and provided support by Ms. Findley and Ms. Williams to disobey, curse and attack Ahmad. The Principal, instead of providing safe work environment, told Ahmad to hide and sneak out of the building. Ahmad brought the

incident to UFT's attention and requested to share this with the superintendent. No action was or has been taken against the student, Ms. Findley or Ms. Williams. The student was coached helped and provided support by Ms. Findley and Ms. Williams to disobey, curse and attack Ahmad on the basis of race, religion and national origin.

AP Williams lacked knowledge of Biological Science, but to put Ahmad down in students' eyes during period 4 on March 23, 2016, Ms. Williams told Ahmad's students that their answer was wrong, applying that Ahmad's teaching was wrong, when, in facts, Ms. Williams was wrong and lacked knowledge in her own specialty. After exposing her lack of knowledge during period 4 on March 23, 2016, Ms. Williams conspired with Ms. Julia Findley and students of period 5. Thereafter, on the same day, in period 5 on March 23, 2016, a student with the support of Ms. Findley cursed at Ahmad and threw chemicals at Ahmad. Julia Findley did not say anything to the student, she smirked, instead of co-teaching, left the classroom with two other students, wrote statement against Ahmad and helped the student to write statements against the Ahmad, based on Ahmad's race, religion and national origin. Whatever happened in period 5 was preplanned and arranged by the work in-cahoots of Ms. Findley and Ms. Williams after Ms. Williams exposed her lack of knowledge of biological science in period 4 on the same day.

The principal's restorative justice people required Ahmad to sit in their office for a meeting during his prep period (Ahmad's contractual right to have a duty-free prep period was violated) when they did not show up for the meeting. However, two days later, the so-called restorative justice person removed Ahmad and a student from the ongoing instructional class to have a meeting in the hallway. No adult supervised the students during that meeting. It was a wastage of students learning time and insult to Ahmad. The person from the restorative justice was of the same race as of the principal and the Principal took no action against that person because of her race as a Principal's.

When students disrespected a teacher from Principal's race then students were required to apologize but, on the other hand students were coached and brought to curse at the Asian Muslim teacher, Ahmad. The January 14, 15, 19 and 20, 2016 lists of suspensions, published with students' names, infractions and their suspension details, and circulated to all SDL staff through SDL global, state, [ "K---- and C---- will both meet with Finnegan to apologize and discuss incident."]. Ms. Finnigan was from the Principal's race. On the other hand, Principal took no action against anyone when AP Williams, AP Emilie Mittiga, teacher Julia Findley and teacher Kelly Houston coached students to curse at Ahmad, harass him and make him fear for his life, run away and hide in the teachers' lounge.

Julia Findley and Ms. Williams (scheduled to be Ahmad's team-teachers) did not agree to co-teach according to any of the 6 Models of Team Teaching posted on UFT's website. However, the principal showed favoritism and inequitably forced Ahmad to do all of the work, (most of the time throughout the school year) and never required Julia Findley and Ms. Williams to do their fair share in team teaching. Julia Findlay and AP Williams numerous times were present in the school building but did not bother to come to the classroom to do team teaching they were scheduled for.
A student misbehaved, took a copy of the test, went to Kelly Houston, got help from her to complete the test, Ahmad marked the student absent because she remained absent throughout the period; at the end of the period the students returned and took the attendance sheet with her. The student was written up but, again, no action was taken by the administration even when a student robbed NYCDOE property.

Two students were given a key by Kelly Houston to enter Ahmad's classroom and take away/remove resources from Ahmad's classroom.

Kelly Houston, a teacher from Principal's race, used an article containing highly controversial and racist material and the principal did nothing against that teacher. On the other hand, the principal kept falsely alleging an Asian Muslim chemistry teacher and putting unfair and unjust disciplinary letters in Ahmad's personnel file, and terminated him because of the hatred and prejudice against Muslims he is walking with.

Per superintendent's letter dated 07/08/2016 Ahmad's termination became effective 60 days from the date of the letter; (probably on 09/06/2016).

4- **The nature of damage or injuries claimed are:**
Ahmad's claim is for reinstatement with retroactive pay, all benefits, and **U.S. DOLLARS ONE MILLION ($ 1,000,000.00) for** monetary damages, for emotional damages, mental suffering, pecuniary loss and related expenses

## OR IN THE ALTERNATIVE

**U.S. DOLLARS TEN MILLION ($ 10,000,000.00) for** monetary damages, for emotional damages, mental suffering, pecuniary loss and related expenses all due to the actions/inaction of the respondents, its agents, servants, and/or employees herein.

Mushtaq Ahmad

New York City Department of Education (NYCDOE), Farina Carmen (Chancellor), Michael Prayor (superintendent), James Olearchik (former Principal of School of Democracy and Leadership "SDL"), Emilie Mittiga (former Assistant Principal of SDL), Catrina Williams (former Assistant Principal of SDL), Julia Findley (former teacher of SDL), Brian Sturm (former teacher of SDL), Kelly Houston (former teacher of SDL)

To: New York City Department of Education (NYCDOE), 65 Court Street, New York, NY 11201
Farina Carmen (Chancellor) - 52 Chambers Street, New York, NY 10007- CGFarina@schools.nyc.gov
Michael Prayor (superintendent) - 1830 Shore Boulevard, Brooklyn, NY 11235 - mprayor@schools.nyc.gov
James Olearchik (former Principal of SDL) – address unknown - jolearchik@schools.nyc.gov
Emilie Mittiga (former Assistant Principal of SDL) - New Utrecht High School, 1601 80th St, Brooklyn, NY 11214
Catrina Williams (former Assistant Principal of SDL) - address unknown - cwillia23@schools.nyc.gov
Julia Findley (former teacher of SDL) - address unknown - jfindla@schools.nyc.gov
Kelly Houston (former teacher of SDL) - address unknown - khouston@schools.nyc.gov

1- **The name and post-office address of claimant is**
Mushtaq Ahmad – 10 Parliament Drive, New City, NY 10956

2- The claimant, Mushtaq Ahmad (hereinafter "Ahmad"), is a male, 60 years old, naturalized American citizen originally from Pakistan, Asian and a Muslim. Effective September 2015, Ahmad rejoined the employ of the New York City Department of Education (hereinafter "NYCDOE") as a science teacher. However, some administrators and employees of NYCDOE conspired and colluded against Ahmad, involved and manipulated students, targeted Ahmad, defamed his character, harassed him, violated collective bargaining agreement (CBA), retaliated and discriminated against Ahmad because of his race, color, age, gender, religion and national origin and wrongfully terminated effective September 2016 and the said discrimination is continuing. The actions set forth above were undertaken without just cause and on the basis of Ahmad's religious beliefs, national origin, gender, age, race, and in retaliation for his complaints of discrimination, and in violation of teachers Collective Bargaining Agreement (CBA), antidefamation laws, the New York State Article 78, the New York State Executive Law, Human Rights Law, § 290 et. seq, as well as 42 U.S.C 2000e, et. seq., Sections 102 and 103 of the Civil Rights Act of 1991, 42 U.S.C. § 1983, 1985; breach of confidentiality, the Age Discrimination in Employment Act of 1967 (ADEA) and the Equal Pay Act of 1963 (EPA).

3- **The time when, the place where, and the manner in which the claim arose:** On or about August 3, 2015, Mr. Olearchik, (hereinafter "Principal") the Principal of School for Democracy and Leadership (hereinafter "SDL"), after interviewing Ahmad and observing his demo lesson on 07/16/2015, recommended Ahmad's hiring as a science teacher at SDL and, via telephone, promised to Ahmad that he would be teaching all chemistry classes except one Living Environment regents prep class. On August 13, 2015, Principal told Ahmad via telephone that Mr. Tinkle, an investigator at the NYCDOE's Office of Personal Investigation (OPI) had told him, the Principal, about Ahmad's discrimination lawsuit against East Ramapo Central School District ("ERCSD").

In retaliation of Ahmad's discrimination lawsuit against ERCSD, the Principal, at least 10 days after making his recommendation for Ahmad's hiring after the 1st demo lesson and interview, required Ahmad to come back for a 2nd demo on August 14, 2015. After the strange and unusual 2nd demo lesson, Kelly Houston, a science teacher, told Ahmad that it was Assistant Principal Catrina Williams who made Ahmad come back for the 2nd demo because Catrina Williams did not want to have a Muslim chemistry teacher in SDL.

After Ahmad's hiring at SDL, AP Catrina Williams said to Ahmad that it was she who made Ahmad come back for the second demo because she doubts Muslim people and they (Muslims) are doing wrong things all over the world.

Ahmad was assigned to a classroom on the 1st floor, whereas other teacher and administration were on the 3rd floor. Ahmad's classroom on the 1st floor was equipped with chalkboard but Ahmad was not provided with even the eraser for that chalkboard. All of the classrooms, on the 3rd floor, were equipped with Whiteboard or Smartboard.

Principal did not keep his promise of giving Ahmad all chemistry classes except one Living Environment regents prep class. However, due to Principal's retaliation, Ahmad was compelled/forced to teach out of his license area and Ahmad was the only teacher who was given all living environment repeat classes but no teacher from Principal's race (Caucasian) got Living Environment repeat class or classes.

Most of the repeat students were from Kelly Houston and or AP Williams and Julia Findley's classes. Principal did not rate them (Kelly Houston, AP Williams and/or Julia Findley) ineffective or developing but Ahmad on the basis of age, race, religion and national origin.

Ahmad was probably the only teacher who taught in the content area in the 1st period, called as (1 Circle) and it was only 30 minutes long. Ahmad's 1st period chemistry class was scheduled for only 30 minutes and 4 days a week with built-in labs, no separate lab period. Ahmad complained to the Principal and Assistant Principals about the 30 minutes 1st period only for 4 days (roughly 45 hours annual instructional time after deducting 1200 lab minutes mandated by NYSED) was not enough to cover the chemistry curriculum and the students were set for failure.

The school administration and some school teachers coached, manipulated, organized and used students against Ahmad, based on the race, religion and national origin. AP Catrina Williams and AP Emilie Mittiga brought students to curse at Ahmad, assisted students in putting Ahmad's life in ganger, did nothing to stop the students from cursing or harassing, nor took any disciplinary action against the students who cursed at and harassed Ahmad in the presence of Assistant Principals.

Julia Findley, a co-teacher, on the basis of race, religion and national origin, let a student throw a solution of chemicals at Ahmad, did not stop the student from throwing chemicals, did not even tell the student not to assault Ahmad and make threats to him. However, Julia Findley smirked and took two students, out of the classroom, to the Dean's office, wrote a statement against Ahmad and helped the students to write statements against Ahmad. The Principal, based on the race, religion and national origin took no action against Julia Findley for not doing her duty of team-teaching with Ahmad and for staying out of the classroom. Julia Findley asked other students in the school to write statements against Ahmad and told them that she did not want to see a Muslim teacher in SDL. Principal was informed about it but he took no action against Julia Findley; met with students to do witnesses coaching.

The Principal threatened Ahmad of dire consequences if Ahmad did not do, (in addition to his own work), the work of his team-teaching partners, Julia Findley and AP Williams. Julia Findley and AP Williams refused to agree to any of the team-teaching models identified by United Federation of Teachers ("UFT") and posted on UFT's website. The principal compelled and forced Ahmad to do his part/share and the parts/shares of his team-teacher partners, Julia Findley and AP Williams. Principal took no action against Julia Findley and AP Catrina Williams. When Ahmad complained to the Principal that his team-teachers [Julia Findley and AP Williams] were not doing their fair share of teaching, then the principal told Ahmad to do all the work or face dire consequences.

AP Williams, AP Emilie Mittiga and the Principal Olearchik intentionally made the work environment hostile and unsafe for Ahmad due to his race, religion and national origin. The said administrators took no action against the students who cursed at Ahmad, made threats to Ahmad, used "F" words about Ahmad's wife, stole NYCDOE property from Ahmad's classroom in the presence of Ahmad and removed resources from Ahmad's classroom. However, on the other hand, when students did anything negative in a Caucasian teacher's class, then the students were required to apologize from the Caucasian teacher.

On behalf of the school administration, A Caucasian Dean from SDL Dean's office, almost every school day, published students' names, their infractions, suspension, the new locations of the students during suspensions and those publication were sent to all SDL staff members through SDL global e-mail system. The Principal did not take any disciplinary action against that Caucasian Dean. However, on the other hand, the Principal put a disciplinary letter of verbal abuse in Ahmad's personnel File when Ahmad mentioned two students' names in a Do Now activity and gave that two students name on the Do Now only to the 3 students of the same lab-group. Principal had different rules for people of different races, religion and national origin.

Against the Collective Bargaining Agreement ("CBA"), Ahmad was forced by the school administrators to work during his duty-free lunch period, preparation period and after school. So far Ahmad has won 2 Grievances and 1 APPR complaint against the school administration.

The Principal and AP Williams intentionally lied and forced Ahmad to sign the observation report again, which he has signed, rebutted and grieved, so they can get rid of Ahmad's rebuttal, and grievance. The school administration has doctored and tampered with Ahmad's personnel file.

AP Williams made false comment in Ahmad's formal observation evaluation report. All chemistry students' statements attached to Ahmad's rebuttal to the said evaluation report prove AP Williams wrong and intentional targeting of Ahmad on the basis of his race religion and national origin.

Ahmad opted for the videotaping of his formal observation, demanded for the videotaping but the Principal denied that request and that SDL administrators did not grant permission to the Ahmad to bring his own video camera and videotape his lesson.

SDL administration did not have enough lab aprons for all chemistry students When Ahmad brought the safety hazard issue to the principal's attention then the principal ordered Ahmad not do chemistry lab with his students but did not buy lab aprons and allow students to compete their lab experiences required by the New York State Board of Regents. That was a deliberate attempt of the principal to make more students of Ahmad not be eligible to take the NYS chemistry regent, let them fail and use the data against Ahmad.

The Principal pressurized Ahmad to give a yearly passing grade in a chemistry class to a student who was excessively absent, did not have enough labs, missing homework, quizzes and tests. Furthermore, when Ahmad did not give that student a passing grade, the student cursed at Ahmad in front of an AP. The AP did not tell the student not to curse, and neither the AP, nor the Principal took any action against the student.

May 27, 2016 was a fun day at SDL and there were no classes on that day. Ahmad was scheduled to have some joyful moments by watching food competition. However, the Principal of SDL put Ahmad in isolation in his office and required him to grade mock chemistry regent. The purpose was to keep Ahmad away from the gatherings inside and outside the school, and that was done due to Ahmad's race, religion and national origin. When Ahmad gave shout out to himself for working on the fun day and being seated in isolation, the Principal came to Ahmad's classroom and said that Ahmad was low level and the principal himself was way above and beyond that level. Thereafter, the Principal removed Ahmad from SDL global, which was global e-mail system to keep all staff informed about the school and students suspensions. It was only Ahmad who was kept in dark, not allowed to have access to the information other staff had access to.

A student was coached helped and provided support by Ms. Findley and Ms. Williams to disobey, curse and attack Ahmad. The Principal, instead of providing safe work environment, told Ahmad to hide and sneak out of the building. Ahmad brought the

incident to UFT's attention and requested to share this with the superintendent. No action was or has been taken against the student, Ms. Findley or Ms. Williams. The student was coached helped and provided support by Ms. Findley and Ms. Williams to disobey, curse and attack Ahmad on the basis of race, religion and national origin.

AP Williams lacked knowledge of Biological Science, but to put Ahmad down in students' eyes during period 4 on March 23, 2016, Ms. Williams told Ahmad's students that their answer was wrong, applying that Ahmad's teaching was wrong, when, in facts, Ms. Williams was wrong and lacked knowledge in her own specialty. After exposing her lack of knowledge during period 4 on March 23, 2016, Ms. Williams conspired with Ms. Julia Findley and students of period 5. Thereafter, on the same day, in period 5 on March 23, 2016, a student with the support of Ms. Findley cursed at Ahmad and threw chemicals at Ahmad. Julia Findley did not say anything to the student, she smirked, instead of co-teaching, left the classroom with two other students, wrote statement against Ahmad and helped the student to write statements against the Ahmad, based on Ahmad's race, religion and national origin. Whatever happened in period 5 was preplanned and arranged by the work in-cahoots of Ms. Findley and Ms. Williams after Ms. Williams exposed her lack of knowledge of biological science in period 4 on the same day.

The principal's restorative justice people required Ahmad to sit in their office for a meeting during his prep period (Ahmad's contractual right to have a duty-free prep period was violated) when they did not show up for the meeting. However, two days later, the so-called restorative justice person removed Ahmad and a student from the ongoing instructional class to have a meeting in the hallway. No adult supervised the students during that meeting. It was a wastage of students learning time and insult to Ahmad. The person from the restorative justice was of the same race as of the principal and the Principal took no action against that person because of her race as a Principal's.

When students disrespected a teacher from Principal's race then students were required to apologize but, on the other hand students were coached and brought to curse at the Asian Muslim teacher, Ahmad. The January 14, 15, 19 and 20, 2016 lists of suspensions, published with students' names, infractions and their suspension details, and circulated to all SDL staff through SDL global, state, [ "K---- and C----- will both meet with Finnegan to apologize and discuss incident."]. Ms. Finnigan was from the Principal's race. On the other hand, Principal took no action against anyone when AP Williams, AP Emilie Mittiga, teacher Julia Findley and teacher Kelly Houston coached students to curse at Ahmad, harass him and make him fear for his life, run away and hide in the teachers' lounge.

Julia Findley and Ms. Williams (scheduled to be Ahmad's team-teachers) did not agree to co-teach according to any of the 6 Models of Team Teaching posted on UFT's website. However, the principal showed favoritism and inequitably forced Ahmad to do all of the work, (most of the time throughout the school year) and never required Julia Findley and Ms. Williams to do their fair share in team teaching. Julia Findlay and AP Williams numerous times were present in the school building but did not bother to come to the classroom to do team teaching they were scheduled for.
A student misbehaved, took a copy of the test, went to Kelly Houston, got help from her to complete the test, Ahmad marked the student absent because she remained absent throughout the period; at the end of the period the students returned and took the attendance sheet with her. The student was written up but, again, no action was taken by the administration even when a student robbed NYCDOE property.

Two students were given a key by Kelly Houston to enter Ahmad's classroom and take away/remove resources from Ahmad's classroom.

Kelly Houston, a teacher from Principal's race, used an article containing highly controversial and racist material and the principal did nothing against that teacher. On the other hand, the principal kept falsely alleging an Asian Muslim chemistry teacher and putting unfair and unjust disciplinary letters in Ahmad's personnel file, and terminated him because of the hatred and prejudice against Muslims he is walking with.

Per superintendent's letter dated 07/08/2016 Ahmad's termination became effective 60 days from the date of the letter; (probably on 09/06/2016).

4- **The nature of damage or injuries claimed are:**
Ahmad's claim is for reinstatement with retroactive pay, all benefits, and **U.S. DOLLARS ONE MILLION ($ 1,000,000.00)** for monetary damages, for emotional damages, mental suffering, pecuniary loss and related expenses

## OR IN THE ALTERNATIVE

**U.S. DOLLARS TEN MILLION ($ 10,000,000.00)** for monetary damages, for emotional damages, mental suffering, pecuniary loss and related expenses all due to the actions/inaction of the respondents, its agents, servants, and/or employees herein.

Mushtaq Ahmad

# Exhibit B

Gmail                                                    **M Ahmad <nymushtaq@gmail.com>**

# Notice of Claims

**M Ahmad <nymushtaq@gmail.com>**                          Fri, Aug 18, 2017 at 12:36 PM
To: Michael Mulgrew <Mmulgrew@uft.org>, Elizabeth Perez <EPerez@uft.org>, James Duncan <JDuncan@uft.org>, Debra
Poulos <DPoulos@uft.org>, Andrea Carte <ACarte@uft.org>, Jason Goldberg <JGoldberg@uft.org>, bsturm@schools.nyc.gov,
"Findlay Julia (18K415)" <jfindla@schools.nyc.gov>
Cc: M Ahmad <nymushtaq@gmail.com>

[Quoted text hidden]

**Notice of Claims to UFT.pdf**
423K

In the matter of Claims of
Mushtaq Ahmad
-against-
United Federation of Teachers (UFT), Michael Mulgrew (President), James Duncan, Debra Poulos, Andrea Carte, Jason Goldberg, Brian Sturm, Julia Findlay

---

To: United Federation of Teachers (UFT) - 52 Broadway, New York, NY 10004
Michael Mulgrew [President United Federation of Teachers (UFT)] - 52 Broadway. New York. NY 10004
United Federation of Teachers (UFT) Brooklyn Borough Office - 335 Adams Street, 25th Floor, Brooklyn, NY 11201
Elizabeth Perez - Borough Representative - Brooklyn Borough Office - 335 Adams Street, 25th Floor, Brooklyn, NY 11201
James Duncan – District Representative - 335 Adams Street, 25th Floor, Brooklyn, NY 11201
Debra Poulos, Brooklyn Borough Office - 335 Adams Street, 25th Floor, Brooklyn, NY 11201
Andrea Carte, Brooklyn Borough Office - 335 Adams Street, 25th Floor, Brooklyn, NY 11201
Jason Goldberg, Brooklyn Borough Office - 335 Adams Street, 25th Floor, Brooklyn, NY 11201
Brian Sturm – former chapter leader SDL – address unknown
Julia Findlay – former delegate to NYSUT – address unknown

1- **The name and post-office address of claimant is**
Mushtaq Ahmad – 10 Parliament Drive, New City, NY 10956

2- The claimant, Mushtaq Ahmad (hereinafter "Ahmad"), is a male, 60 years old, naturalized American citizen originally from Pakistan, Asian and a Muslim. Effective September 2015, Ahmad rejoined the employ of the New York City Department of Education (hereinafter "NYCDOE") as a science teacher. However, some administrators and employees of NYCDOE conspired and colluded against Ahmad, involved and manipulated students, targeted Ahmad, defamed his character, harassed him, violated collective bargaining agreement (CBA), retaliated and discriminated against Ahmad because of his race, color, age, gender, religion and national origin and wrongfully terminated effective September 2016 and the said discrimination is continuing. The actions set forth above were undertaken without just cause and on the basis of Ahmad's religious beliefs, national origin, gender, age, race, and in retaliation for his complaints of discrimination, and in violation of teachers Collective Bargaining Agreement (CBA), antidefamation laws, the New York State Executive Law, Human Rights Law, § 290 et. seq, as well as 42 U.S.C 2000e, et. seq., Sections 102 and 103 of the Civil Rights Act of 1991, 42 U.S.C. § 1983, 1981, and 1985; breach of confidentiality, the Age Discrimination in Employment Act of 1967 (ADEA) and the Equal Pay Act of 1963 (EPA).

3- **The time when, the place where, and the manner in which the claim arose:**
Per superintendent's letter dated 07/08/2016 Ahmad's termination became effective 60 days from the date of the letter; (probably on 09/06/2016). UFT, its office holders and representatives failed to fulfill their duty/obligation of fair representation. Instead of helping its member Ahmad, the claimant, UFT, its office holders and representatives worked against Ahmad and helped or attempted to help Ahmad's employer NYCDOE, NYCDOE's administrators, agents or employees.

4- **The nature of damage or injuries claimed are:**
Ahmad's claim is for reinstatement with retroactive pay, all benefits, and **U.S. DOLLARS ONE MILLION ($ 1,000,000.00) for** monetary damages, for emotional damages, mental suffering, pecuniary loss and related expenses

### OR IN THE ALTERNATIVE

**U.S. DOLLARS TEN MILLION ($ 10,000,000.00) for** monetary damages, for emotional damages, mental suffering, pecuniary loss and related expenses all due to the actions/inaction of the respondents, its agents, servants, and/or employees herein.

Mushtaq Ahmad

**I,** Mushtaq Ahmad, Pro Se Plaintiff, hereby certify that a copy of the Amended Complaint

and the exhibits attached thereto has been sent on November 29, 2021 via U.S. mail to:

1. Nicholas Green, Attorney for DOE Defendants, 100 Church Street, Room 2-176, New York,
   New York 10007

2. Michael J. Del Piano, attorney, 52 Broadway, 9th Floor, New York, NY 10004.

Respectfully submitted,

Dated: New City, NY
     November 29, 2021

Mushtaq Ahmad (Pro Se, Plaintiff)
10 Parliament Drive
New City, NY 10956
Phone: (845)304-8981