UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MUSHTAQ AHMAD,

                    Plaintiff,
            v.

NEW YORK CITY DEPARTMENT OF
EDUCATION, *et al.*,

                    Defendants.

**MEMORANDUM & ORDER**
18-cv-3494 (HG) (LB)

**HECTOR GONZALEZ**, United States District Judge:

## Table of Contents

BACKGROUND ........................................................................................................ 2

PROCEDURAL HISTORY ....................................................................................... 5

LEGAL STANDARD ................................................................................................ 6

DISCUSSION ............................................................................................................ 7

I.      Violation of the CBA ................................................................................... 8

II.     Title VII and ADEA Retaliation Claims After September 1, 2016 ............ 9

III.    Section 1983 ............................................................................................... 12

        A.      Fariña ............................................................................................. 15

        B.      Prayor ............................................................................................ 16

        C.      Rodi ................................................................................................ 17

        D.      Hall and Grossman ........................................................................ 17

        E.      Findley and Houston ..................................................................... 18

        F.      Olearchik, Mittiga, Williams ........................................................ 20

IV.     Section 1985 ............................................................................................... 22

V.      Equal Pay Act ............................................................................................ 23

VI.     Wiretap Act ................................................................................................ 24

VII.    Supremacy Clause ...................................................................................... 25

VIII.   Procedural Due Process Claims ................................................................. 25

IX.     State Law Claims ....................................................................................... 27

X.      Dismissal With Prejudice .......................................................................... 27

CONCLUSION ........................................................................................................ 29

Plaintiff Mushtaq Ahmad brings this *pro se* action against the New York City Department of Education ("DOE"); Carmen Fariña, former Chancellor of the DOE; Michael Prayor, Brooklyn South High School Superintendent; James Olearchik, former Principal of the School of Democracy and Leadership ("SDL"); Emilie Mittiga, former Assistant Principal of SDL; Catrina Williams, former teacher and Assistant Principal of SDL; Cedric Hall, Principal of the Eagle Academy for Young Men III ("Eagle Academy"); Benjamin Grossman, Principal of the Bronx Academy for Software Engineering ("BASE"); Katherine G. Rodi, Director of the DOE's Office of Employee Relations; Kelly Houston, former teacher at SDL; Julia Findley, former teacher at SDL; John Does 1–3, and Jane Does 1–3 (all the DOE-related Defendants are referred to collectively as, the "DOE Defendants"); as well as the United Federation of Teachers ("UFT") and New York State United Teachers ("NYSUT") (collectively, the "Union Defendants").   ECF No. 79 ("Amend. Compl.") ¶¶ 4–16.   Plaintiff alleges that Defendants discriminated against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–34; 42 U.S.C. §§ 1981 ("Section 1981"), 1983 ("Section 1983"), and 1985 ("Section 1985"); sections 102 and 103 of the Civil Rights Act of 1991, Pub. L 102–66, Nov. 21, 1991, 105 Stat 1071; Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (the "Wiretap Act"), 18 U.S.C. §§ 2510–23; the Equal Pay Act, 29 U.S.C. § 206(d); the Due Process and Supremacy Clauses of the U.S. Constitution; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290–97, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101–31; and defamation.   *Id.* ¶¶ 107–35.

Before the Court are the DOE Defendants' and Union Defendants' motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.   ECF Nos. 109, 114.   For the reasons stated herein, the motions are granted—Plaintiff's federal claims are dismissed with prejudice, and Plaintiff's state claims are dismissed without prejudice.

## BACKGROUND

Plaintiff is a Muslim man, of Pakistani descent and national origin, in his sixties. Amend. Compl. ¶ 3.   He is a naturalized United States citizen.   *Id.*   In August 2015, Defendant Olearchik, Principal of SDL, offered Plaintiff a probationary position as a chemistry teacher after interviewing him and observing two demonstration lessons.   *Id.* ¶¶ 20–28, 60, 63. Plaintiff alleges that while at SDL he suffered adverse employment actions including, among other things, that:   (i) he was the only teacher assigned a first-floor classroom with a blackboard, as opposed to a third-floor classroom with a whiteboard or SMART board, *id.* ¶¶ 27–28; (ii) he was told he was to be assigned mostly chemistry classes, but then was assigned mostly "Living Environment" classes, including for students repeating the New York State Regents Examination, *id.* ¶¶ 29–30; (iii) his class schedule did not provide enough time to cover the curriculum material, *id.* ¶ 31; (iv) and he was told to work through his duty-free lunch period, preparation period, and after school, *id.* ¶¶ 39, 42.   Plaintiff also alleges that his students were not disciplined by school administrators—even after the students allegedly harassed him—while other SDL teachers' students were appropriately disciplined.   *Id.* ¶¶ 40, 48, 53, 55, 56. Sometime in 2016, Plaintiff alleges that he filed complaints with the DOE's Office of Equal Opportunity ("OEO").   *Id.* ¶ 58.

Plaintiff further alleges that his "team-teaching partners"[1] at SDL—Defendants Williams and Findley—made negative comments either to him, or to SDL students, regarding his race, religion, and national origin.   He specifically alleges that Defendant Williams told him that "she did not want to have a Muslim chemistry teacher." *Id.* ¶ 26.   He additionally alleges that Defendant Findley told students that she did not want a Muslim teacher at SDL.   *Id.* ¶¶ 35–37.

At the end of the 2015–2016 school year, Plaintiff was assigned a rating of "Developing" in his Annual Professional Performance Review, *id.* ¶¶ 58–59, even though his team-teaching partners were assigned ratings of "Effective," *id.* ¶¶ 31, 38.   A month or so later, in July 2016, Defendant Prayor denied Plaintiff's Certification of Completion of Probation, and Plaintiff was informed he would be terminated in 60 days.   *Id.* ¶ 60–62.   Plaintiff appealed the denial of probation to the DOE's Office of Appeals and Review.   *Id.* ¶ 63.   A hearing was scheduled for June 2017, but it was cancelled after Plaintiff insisted on "making his own recording" of the hearing "on his own recording device," even though the hearing was already being recorded and a copy of that recording was to be sent to Plaintiff.   *Id.* ¶¶ 64–70.

Plaintiff's termination became effective in September 2016.   *Id.* ¶ 63.   Because Plaintiff was denied his Certification of Completion of Probation, he no longer had clearance to

---

[1]      Plaintiff does not define "team teaching" in the amended complaint but references the "Models of Team Teaching posted on the UFT's website."   Amend. Compl. ¶ 54.   The UFT's website defines "team teaching" as a type of teaching where there are multiple "teachers in the classroom" at the same time.   *See* United Federation of Teachers, *ICT models*, www.uft.org/teaching/students-disabilities/integrated-co-teaching-ict/ict-models (last visited Mar. 31, 2023).

teach chemistry at other high schools in the City School District of the City of New York (the "City District").[2]  *Id*. ¶¶ 62, 83, 99.

In June 2017, Plaintiff filed a charge with the Equal Opportunity Employment Commission ("EEOC") alleging discrimination on the part of SDL school administrators.  *Id.* ¶¶ 73, 82, 103.   He received a notice of right to sue on March 14, 2018.   *Id*.   Plaintiff, however, reapplied for positions as a high school chemistry teacher in the City District.   In September 2017, Plaintiff interviewed for a chemistry teacher position at Eagle Academy.   *Id.* ¶ 77.   After Plaintiff had worked at Eagle Academy a little over a week, the DOE's Office of Employee Relations informed Eagle Academy that Plaintiff did not have clearance to work as a high school chemistry teacher in the City District and the offer was rescinded.   *Id.* ¶¶ 79–80, 82.

On October 17, 2017, Plaintiff filed a petition with the New York State Education Department ("NYSED") pursuant to N.Y. Educ. Law § 310.   ECF No. 54-1 at 1–9 ("NYSED Petition").   Plaintiff appealed the denial of his probation at SDL, as well as the rescission of his nomination to teach at Eagle Academy.   *Id.*   Plaintiff alleged that he was discriminated against because of his race, religion, and national origin, and that he was retaliated against for filing his earlier complaints with the EEOC and the DOE's OEO.   *Id.*   The NYSED denied Plaintiff's petition.   *See Matter of Mushtaq Ahmad v. Chancellor Carmen Fariña et al.*, NYSED No. 17542 (Dec. 3, 2018); ECF No. 54-2 (NYSED Determination).   Specifically, the NYSED found

---

[2]    The Court notes that when a teacher is terminated by a DOE school, he or she becomes ineligible for appointment to a position in the same license and level as the position he or she was terminated from in the City District.   *See* DOE Chancellor's Regulation No. C-205(25)(c) ("Since for this purpose, the schools operated under the jurisdiction of the Chancellor and Central Board comprise one district, persons whose probationary service was discontinued [or denied] in one school in the City District may not be reappointed under the same license to another school in the City District.").

that Plaintiff's claims against SDL were untimely and that there was no evidence that the

rescission of his nomination to teach at Eagle Academy was caused by discrimination.   *Id.*

On October 13, 2017, Plaintiff interviewed for a substitute teacher position at BASE.

*Id.* ¶ 91.   BASE's principal nominated Plaintiff but then withdrew the nomination for the

position in November 2017, without Plaintiff ever having worked there.   *Id.* ¶¶ 92–94.

Plaintiff alleges that on December 24, 2017, his profile on the DOE's Online Teacher

Application website marked him as "Not Certified."   *Id.* ¶ 99.   On April 6, 2018, Plaintiff filed

a new charge with the EEOC, and received a notice of right to sue on that charge on May 23,

2018.   Amend. Compl. ¶ 104.

## <u>PROCEDURAL HISTORY</u>

On June 11, 2018, Plaintiff filed his original complaint against the above-captioned

Defendants, ECF No. 1, and moved for leave to proceed *in forma pauperis*, ECF Nos. 2, 5,

which the Court granted, ECF No. 6.   On November 29, 2018, after the Court granted

Defendants several extensions to answer or otherwise respond to the complaint, both the DOE

Defendants and Union Defendants requested premotion conferences on motions to dismiss the

complaint.   ECF Nos. 39, 42.   The Court held a premotion conference on January 14, 2019,

where it set a briefing schedule for Defendants' motions to dismiss.   On July 7, 2020—after

already granting Plaintiff six extensions to file his response to Defendants' motions to dismiss—

the motions were fully briefed, and the motion papers were filed on the docket.   ECF Nos. 53–

67.   On November 13, 2020, the Court issued its Decision and Order on Defendants' motions to

dismiss, granting the Union Defendants' motion to dismiss in its entirety, and granting in part

and denying in part the DOE Defendants' motion to dismiss.   ECF No. 68 (Decision and

Order).   The Court also granted Plaintiff leave to "file an amended complaint within thirty days to plead his compliance with the requirement he file[d] a notice of claim against the DOE, Defendant Fariña, and Defendant Prayor."[3]   *Id.* at 16.

Plaintiff filed his amended complaint on November 29, 2021, making only minor revisions to the factual allegations in his original complaint.   *See* Amend. Compl. ¶¶ 26, 33, 40, 42, 44, 46, 52, 57, 59.   The amended complaint names the same Defendants as in the original complaint, including parties who had already been dismissed, and includes all his original causes of action, including those which had already been dismissed by the Court.   *Id.* ¶¶ 107–32. Plaintiff additionally alleges several new causes of action.[4]   Plaintiff also attached his notice of claims pursuant to N.Y. Educ. Law § 3813 to the amended complaint, as the Court requested in its Decision and Order.   *Id.* at 31–42 (Exhibits A and B).   Defendants again requested leave to file motions to dismiss the amended complaint, ECF Nos. 86, 91, and the Court set a briefing schedule for Defendants' second set of motions to dismiss on February 28, 2022.   In August 2022, the motions were fully briefed.   ECF Nos. 108–120.

## LEGAL STANDARD

The Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*."

---

[3]   The Court allowed leave to amend for Plaintiff to demonstrate that Plaintiff was not barred by the statute of limitations for city and state law claims against the DOE and its officers, which includes the Chancellor and Superintendents.   *See* N.Y. Educ. Law § 3813(2-b); *Sotomayor v. City of N.Y.*, 713 F.3d 163 (2d Cir. 2013)

[4]   Specifically, Plaintiff added claims under the Supremacy Clause of the U.S. Constitution, the Wiretap Act, and the Equal Pay Act.   Amend. Compl. ¶¶ 133–35.

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).[5]   However, the "special

solicitude" accorded to *pro se* litigants, *id.* at 475, has its limits—to state a claim, *pro se*

pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires

a complaint to make a short and plain statement showing that the pleader is entitled to relief "that

is plausible on its face."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court

to draw the inference that the defendant is liable for the alleged misconduct.   *See Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009).   In reviewing the complaint, the Court must accept all well-

pleaded factual allegations as true.   *Id.*   However, the Court does not have to accept as true

"[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal

conclusions.   *Id.*   After separating legal conclusions from well-pleaded factual allegations, the

Court must determine whether those facts make it plausible—not merely possible—that the

pleader is entitled to relief.   *Id.*

## DISCUSSION

Many of Plaintiff's claims in the amended complaint were previously dismissed, without

leave to amend, for failing to state a claim upon which relief could be granted.   *See* ECF No. 68

(Decision and Order).   Plaintiff's amended complaint once again asserts these dismissed claims,

but contains few new factual allegations related to these claims, and none which alters the

Court's previous decision.   *See* Amend. Compl. ¶¶ 26, 33, 40, 42, 44, 46, 52, 57, 59.

Accordingly, Plaintiff's (i) discrimination claims under Title VII and the ADEA, ECF No. 68 at

---

[5]      Unless otherwise noted, when quoting judicial decisions this order accepts all alterations
and omits citations, internal quotation marks, and footnotes.

8–9; (ii) retaliation claims under Title VII and the ADEA occurring before September 1, 2016, *id.* at 8; (iii) Section 1981 claims, *id.* at 11; (iv) *Monell* claim against the DOE, *id.* at 11–12; (v) claims under sections 102 and 103 of the Civil Rights Act of 1991, *id.* at 12; (vi) NYSHRL and NYCHRL claims for retaliation, *id.* at 13–14; and (vii) the duty of fair representation claim against the Union Defendants, *id.* at 15–16, are dismissed for the same reasons set forth in the Court's previous order.    As the duty of fair representation claim is the sole claim against the Union Defendants in the amended complaint, they are dismissed from the case.

The only remaining claims in the amended complaint are:   (i) claims for violations of the collective bargaining agreement against the DOE Defendants; (ii) Title VII and ADEA retaliation claims accruing after September 1, 2016; (iii) Section 1983 claims against individual Defendants; (iv) Section 1985 claims; (v) Equal Pay Act claims; (vi) Wiretap Act claim; (vii) Supremacy Clause claim; (viii) Due Process Clause claims; (ix) NYSHRL and NYCHRL discrimination claims; and (x) defamation claims.

**I.    Violation of the CBA**

Plaintiff alleges "numerous" violations of the collective bargaining agreement ("CBA") between the DOE and the UFT, the union representing Plaintiff.    Amend. Compl. ¶ 128. Specifically, Plaintiff alleges that the CBA was violated when he "was forced by the school administrators to work during his duty-free lunch period, preparation period, and after school," *id.* ¶ 42; pressured into "giv[ing] a year-end passing grade in a chemistry class to a student" who did not deserve it, *id.* ¶ 48; and that he was not paid his proper salary during the week he worked at Eagle Academy, *id.* ¶ 90.

Plaintiff, however, "lacks standing to assert a breach of the contract between DOE and the Union." *Cummings v. City of New York*, No. 19-cv-7723, 2020 WL 882335, at *14 (S.D.N.Y. Feb. 24, 2020). "By becoming a union member, an individual employee has no individual rights under a collective bargaining agreement which he can enforce against his employer except through the union."[6]  *Id.*

Accordingly, Plaintiff's claims under the CBA are dismissed for lack of standing.

## II.    Title VII and ADEA Retaliation Claims After September 1, 2016

The Court already dismissed all of Plaintiff's discrimination claims under Title VII and the ADEA, *see* ECF No. 68 at 8–9, and Plaintiff's Title VII and ADEA retaliation claims before September 1, 2016, *id.* at 8.   Therefore, all that remains are Plaintiff's retaliation claims after September 1, 2016.

"To establish a *prima facie* case of retaliation under Title VII [and] the ADEA . . . Plaintiff must show (1) participation in protected activity; (2) Defendants knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and any adverse employment action."   *Rivera v. Greater Hudson Valley Health Sys., et al.*, No. 21-cv-1324, 2023 WL 2588308, at *16 (S.D.N.Y. Mar. 21, 2023) (*citing Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).   A "protected activity" is an activity "taken to protest or oppose statutorily prohibited discrimination," including "complaints to management."   *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 85 (E.D.N.Y. 2020) (*citing Wimes v. Health*, 157

---

[6]    Although Plaintiff does not explicitly state that he is a union member, the Court infers membership by virtue of the fact that Plaintiff alleges that he did in fact enforce his rights against his employer through the union, noting in the amended complaint that he "won two grievances" against SDL school administration.   Amend. Compl. ¶ 42, 134.

F. App'x 327, 328 (2d Cir. 2005)).   "Proof of causation can be shown either:   (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."   *Hicks,* 593 F.3d at 170.

The Court previously noted it was skeptical of Plaintiff's allegations of retaliation in his original complaint because those allegations "rel[ied] entirely on temporal proximity to demonstrate a causal connection between the rescissions of his nominations and his protected activities of filing an EEOC charge on June 28, 2017 and his NYSED petition on October 17, 2017."   ECF No. 68 at 10.   However, the Court was unwilling to conclude at that time that Plaintiff failed to make a *prime facie* case of retaliation under Title VII and the ADEA.   *Id.*

Plaintiff's amended complaint once again relies entirely on temporal proximity to demonstrate a causal connection between the rescissions of his nominations and his protected activities.[7]   *See* Amend. Compl. ¶¶ 73, 94.   The only allegations that inform the question of whether Plaintiff was subjected to retaliation are that the rescission of his nomination to work at Eagle Academy occurred 83 days after he filed his first EEOC charge, *id.* ¶ 73, and that the rescission of his nomination to work at BASE occurred a few weeks after he filed his NYSED petition, *id.* ¶ 94.   Although the Court was not willing to dismiss Plaintiff's Title VII and ADEA retaliation claims in its prior order under a similar set of facts, it is willing to do so now

---

[7]     Plaintiff insists in his opposition that his "allegations do not rely entirely on temporal proximity to demonstrate a causal connection between the recessions . . . and his protected activities."   ECF No. 108 at 38.   However, Plaintiff then simply restates the allegations in his complaint—including many allegations from before 2016, which the Court already dismissed as time barred.   *Id.* at 38–42.

given that Plaintiff has been given an opportunity to amend his retaliation claims after being made aware of the Court's previous skepticism. "A district court . . . possesses the inherent authority to *sua sponte* reconsider its own interlocutory orders before they become final." *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail Rigging, LLC*, No. 11-cv-3238, 2015 WL 545565, at *2 (S.D.N.Y. Feb. 9, 2015).

Other courts in this Circuit have found that "where a plaintiff is demonstrably at risk of the adverse action in advance of the protected activity, he cannot show on the basis of temporal proximity alone that the adverse action resulted from the conduct." *Williams v. City Univ. of N.Y.*, No. 10-cv-2127, 2011 WL 6934755, at *7 (E.D.N.Y. Dec. 30, 2011); *Bergesen v. Manhattanville Coll.*, No. 20-cv-3689, 2021 WL 3115170, at *8 (S.D.N.Y. July 20, 2021) (holding that where disciplinary proceedings commenced before plaintiff engaged in protected activity, the "Amended Complaint may not rely on timing alone, and must provide an alternate basis to plausibly allege retaliatory intent"). Here, Plaintiff was demonstrably at risk of the adverse action in advance of the protected activity—he was terminated from SDL in 2016, almost a year before he filed his first EEOC complaint. *Id.* ¶¶ 60–62, 73. Because Plaintiff's allegations in the amended complaint rely exclusively on the temporal connection between the rescissions of his nominations at Eagle Academy and BASE and the filing of his EEOC complaint and NYSED petition, which occurred well after his termination from SDL placed him "demonstrably at risk" of such actions, the Court finds that Plaintiff has failed to establish a causal connection necessary to support an inference of retaliation.

Accordingly, Plaintiff's Title VII and ADEA retaliation claims after September 1, 2016, are dismissed.

11

## III.    Section 1983

Section 1983 provides, in relevant part, that:    "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."    42 U.S.C. § 1983.    Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."    *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (citing *Baker*).    To state a claim under Section 1983, a plaintiff must allege two essential elements:    "(1) that the defendants deprived him of a right secured by the Constitution or laws of the United States; and (2) that they did so under color of state law."[8]    *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001).

Plaintiff alleges that "Defendant NYC DOE et al., in violation of 42 U.S.C. §1983 discriminated against and retaliated against plaintiff in the terms, conditions and privileges of employment on account of his religion, race and national origin and his opposition to race, national origin and religious discrimination in violation of Title VII of the Civil Rights Act of 1964."    Amend. Compl. ¶ 116.    The DOE Defendants correctly point out that "Plaintiff may not assert a standalone violation of Title VII under § 1983."    ECF No. 115 at 23; *see also Urli v. Town of Hempstead Sanitary Dist. No. 7*, No. 20-cv-960, 2021 WL 4311141, at *6 (E.D.N.Y. Sept. 22, 2021).    However, the Court interprets a *pro se* Plaintiff's amended complaint to raise

---

[8]    There appears to be no dispute that all the individual DOE Defendants, employees of the DOE, acted under the color of state law.    *See* ECF No. 111, 119.

the "strongest arguments that they *suggest*." *Triestman*, 470 F.3d at 474. Therefore, it chooses to interpret Plaintiff's § 1983 claim as a parallel allegation of unconstitutional employment discrimination and retaliation in violation of the Equal Protection Clause of the Fourteenth Amendment and unconstitutional racial discrimination in violation of Section 1981. *See, e.g.*, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 82 (2d Cir. 2015) ("[O]nce the color of state law requirement is met, except for the issue of individual liability, an equal protection claim parallels a plaintiff's Title VII claim."); *Vill. of Freeport v. Barrella*, 814 F.3d 594, 607 (2d Cir. 2016) (noting that "claims of racial discrimination [are analyzed] identically under Title VII and § 1981").[9]

"To state a *prima facie* claim for employment discrimination under § 1981, Title VII, ADEA, or New York law, a plaintiff must show (1) that he is a member of a protected class; (2) that he was qualified for the position in question; (3) that defendants took an adverse employment action against him; and (4) that the circumstances support an inference of discrimination on the basis of his membership in a protected class." *Ahmad v. White Plains City Sch. Dist.*, No. 18-cv-3416, 2019 WL 3202747, at *5 (S.D.N.Y. July 16, 2019).[10]

---

[9]     Although Title VII claims and 1983 claims for violations of the Equal Protection Clause and 1981 are "subject to essentially the same pleading standards," *Saez v. Jud. Branch*, No. 21-cv-915, 2022 WL 3369737, at *3 (D. Conn. Aug. 16, 2022), "§ 1983 and Title VII differ in important ways," *Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019). Unlike Title VII, "[w]hen a plaintiff sues an individual defendant under § 1983 . . . , he must show the culpable personal involvement of the individual defendant . . . , and § 1983 does not impose vicarious liability on an individual defendant for . . . acts of others." *Saez*, 2022 WL 3369737, at *3; *see also Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("[A] plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated [a right secured by the Constitution or federal law].").

[10]     The Court notes that Plaintiff in the instant action is the same plaintiff as in *Ahmad*, 2019 WL 3202747, a case involving very similar claims—including Title VII, ADEA, Section 1981,

"Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Vega*, 801 F.3d at 85.   "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.*   However, the creation of a "hostile work environment" is considered an adverse employment action. *Littlejohn v. City of New York*, 795 F.3d 297, 320 (2d Cir. 2015).   For a plaintiff adequately to allege a hostile work environment he must "plead facts sufficient to support the conclusion that he was faced with harassment of such quality or quantity that a reasonable employee would find the conditions of his employment altered for the worse."   *Ahmad*, 2019 WL 3202747, at *7. "[W]hen a plaintiff alleges that multiple individual defendants have engaged in uncoordinated and unplanned acts of harassment, each defendant is only liable under § 1983 when his own actions are independently sufficient to create a hostile work environment."   *Raspardo v. Carlone*, 770 F.3d 97, 115 (2d Cir. 2014).

The Court has already dismissed Plaintiff's Section 1983 claim (*i.e.*, a *Monell* claim) against the DOE.[11]   ECF No. 68 at 11.   Thus, Plaintiff's only remaining Section 1983 claims

---

Section 1983, Section 1985, and due process claims—but against a different school district.   *Id.* at *1.

[11]      "Any suit against a [N.Y.C.] agency must be brought against the City of New York," not the agency itself.   *McDaniels v. Alepandr*, No. 19-cv-2286, 2019 WL 1936723, at *2 (E.D.N.Y. May 1, 2019).   While "the City of New York is amenable to suit, a municipality can be liable under § 1983 only if a plaintiff is able to show that a municipal policy or custom caused the deprivation of his constitutional rights."   *Id.*; *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978).   The Court previously found that "Plaintiff has failed to allege the deprivation of his rights resulted from a policy, custom, or practice."   ECF No. 68 at 11.

are against individuals, which requires a showing of "culpable personal involvement [on the part] of the individual defendant." *Saez*, 2022 WL 3369737, at *3.   "The Second Circuit has held that personal involvement . . . means direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Swanhart v. New York*, No. 20-cv-6819, 2022 WL 875846, at *5 (S.D.N.Y. Mar. 24, 2022) (*citing Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)).   In addition, Plaintiff must show "that the adverse action would not have occurred *but for* the individual defendant's intent to discriminate."[12]  *Saez*, 2022 WL 3369737, at *4 (emphasis added).

### A. Fariña

Defendant Fariña was the New York City Schools Chancellor during the relevant period alleged in the amended complaint.   The only paragraph in the amended complaint that specifically references Defendant Fariña simply notes that she "was the Chancellor of the DOE, and, pursuant to the Education Law, functioned as the superintendent of schools and chief executive officer of the NYCDOE."   Amend. Compl. ¶ 7.   Plaintiff argues in his opposition that Defendant Fariña and other DOE administrators "were informed via email" about Plaintiff's allegation and "instead of stopping the unlawful retaliation and discrimination, condoned it and became partner[s] in acts of discrimination."   ECF No. 108 at 30.   Plaintiff's allegation that

---

[12]     Both Title VII and Section 1983 retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action.   *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."); *see also Naumovski*, 934 F.3d at 220 (noting that Title VII and Section 1983 retaliation claims are evaluated under the same standard).

Defendant Fariña, or any other Defendant, became a "partner in the acts of discrimination," *id.*, because they did not respond to his emails is without merit.   The failure of an individual to respond to Plaintiff's emails "does not, without more, plausibly suggest that Defendants . . . were personally involved in the alleged violations of Plaintiff's . . . rights."   *Malek v. New York Unified Ct. Sys.*, No. 22-cv-5416, 2023 WL 2429528, at *17 (E.D.N.Y. Mar. 9, 2023).   Thus, Plaintiff does not allege that Defendant Fariña had any personal involvement in any of Plaintiff's alleged deprivations.

Accordingly, Plaintiff's Section 1983 claim against Defendant Fariña is dismissed.

**B.  Prayor**

Defendant Prayor was the Brooklyn South High School Superintendent.   Plaintiff merely alleges that Prayor "denied Plaintiff completion of probation, terminated Plaintiff's NYC teaching license, and caused Plaintiff to be 'flagged' or 'problem coded' in one or more DOE databases."   Amend. Compl. ¶¶ 60–61.   Plaintiff does not allege that Prayor ever had any direct interaction with him, or that Prayor ever mentioned his race, ethnicity, religion, or nationality.   Nor does Plaintiff allege that Prayor treated him differently than any other teacher. Allegations that Prayor chose not to continue Plaintiff's employment during his probationary period, and the subsequent loss of Plaintiff's authorization to teach high school chemistry in the City District because his probation was discontinued, *see id*. ¶¶ 62, 99; *supra* n.2, do not, without more, plausibly allege a Section 1983 claim against Prayor.   *See Naumovski,* 934 F.3d at 212 ("[Section] 1983 does not permit . . . vicarious liability.   If an individual defendant has not *personally* violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against the defendant."); *see also Sutter v. Dibello*, No. 18-cv-817, 2021 930459, at *28

16

(E.D.N.Y. Mar. 10, 2021) ("For a . . . retaliation claim to survive a motion to dismiss, the plaintiff must plausibly allege that the employer took an adverse employment action against her because she opposed any unlawful employment practice. . . .   [I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII [or other unlawful discrimination].").

Accordingly, Plaintiff's Section 1983 claim against Defendant Prayor is dismissed.

## C. Rodi

Defendant Rodi was the DOE's Director of the Office of Employee Relations. Plaintiff's only allegation against Defendant Rodi is that she told Eagle Academy administrators that Plaintiff did not have DOE clearance.   *Id.* ¶¶ 80–82.   As noted earlier, this appears to be true—after Plaintiff was denied his Certification of Completion of Probation, he became ineligible to work as a high school chemistry teacher in the City District.   *See id*. ¶¶ 62, 99; *supra* n.2.   Allegations that Rodi (correctly) informed Eagle Academy administrators of Plaintiff's lack of DOE work clearance, do not, without more, plausibly suggest a Section 1983 claim against Rodi.

Accordingly, Plaintiff's Section 1983 claim against Defendant Rodi is dismissed.

## D. Hall and Grossman

Defendants Hall and Grossman were the Principals of Eagle Academy and BASE, respectively.   Plaintiff's only allegations against these Defendants are that Hall rescinded Plaintiff's nomination for the teaching position at Eagle Academy and that Grossman rescinded Plaintiff's nomination at BASE.   *Id.* ¶¶ 84, 95.   Despite Plaintiff's conclusory assertion that

17

these actions were done in retaliation for Plaintiff's EEOC complaint and his discrimination complaints filed with the OEO in 2016, *id.* ¶ 96, he provides no allegation that would permit the Court reasonably to infer that "retaliation was a but-for cause" of Hall's and Grossman's decisions to rescind Plaintiff's nominations. *Naumovski*, 934 F.3d at 220. Plaintiff has thus failed to allege plausibly a Section 1983 claim against either Hall or Grossman.

Accordingly, Plaintiff's Section 1983 claims against Defendants Hall and Grossman are dismissed.

### E. Findley and Houston

Defendants Findley and Houston were teachers at SDL with Plaintiff. Plaintiff does not allege that either Defendant had a supervisory role related to him. While Plaintiff does allege that they "coached students to curse at Plaintiff, harass him, make him fear for his life, run away, and hide in the teachers' lounge," he provides meager factual support to demonstrate how either teacher coached, helped, or supported the actions of any student. *Id.* ¶¶ 49, 52, 53. For example, Plaintiff merely alleges that Findley "smirked" after an incident where a student misbehaved around Plaintiff, and then "helped the students to write statements." *Id.* ¶¶ 35–37. Plaintiff alleges that Defendant Houston "used in her classes an article containing highly controversial and racist material," *id.* ¶ 33, but fails to explain how this allegation relates to any alleged adverse employment action against Plaintiff.

"[C]ourts in the Second Circuit routinely dismiss discrimination claims where the only allegations made in support are stray remarks by non-decisionmakers wholly unconnected to the adverse employment action underlying the claim." *Baez v. Amazon.com Servs., LLC*, No. 21-cv-4195, 2023 WL 2390539, at *6 (E.D.N.Y. Mar. 7, 2023); *see also, e.g.*, *Dickerson v. BPP*

18

*PCV Owners LLC*, No. 21-cv-9003, 2022 WL 4538281, at *4 (S.D.N.Y. Sept. 28, 2022)

("Plaintiff's allegation that an unknown number of biased comments were made by unnamed

security guards at unspecified times is simply too vague and unconnected to the adverse action

underlying the claim . . . to support an inference of discriminatory animus"); *Ahmad*, 2019 WL

3202747, at *5 (granting motion to dismiss Title VII and Section 1981 claims where plaintiff

alleged a fellow chemistry teacher made derogatory remarks against him).

Nothing in the amended complaint alleges any "direct participation" by either Findley or

Houston in any alleged adverse employment action.    Rather, Plaintiff's allegations involve

these Defendants' alleged, but unspecified, support of student misbehavior, Amend. Compl. ¶¶

35–37, 49, 52, 53, or their own classroom pedagogy, *id.* ¶ 33.    As "Plaintiff alleges no facts

indicating that either one had decision-making authority with respect to personnel decisions, or

were otherwise involved with Plaintiff's termination," he fails to allege plausibly that Defendants

Findley or Houston discriminated against him.    *Ahmad*, 2019 WL 3202747, at *5.

Furthermore, while Findley's and Houston's alleged behavior may have been offensive,

the Court cannot say that Plaintiff has plausibly alleged that their "actions [were] independently

sufficient to create a hostile work environment."    *Raspardo*, 770 F.3d at 115.    Rather, the

Court finds them to be "isolated instances that are neither sufficiently severe nor pervasive to

alter the terms of Plaintiff's employment," and thus "fall short of a claim for a hostile work

environment."    *Harris v. Off. of N.Y. State Comptroller*, No. 20-cv-8827, 2022 WL 814289, at

*11 (S.D.N.Y. Mar. 17, 2022) (finding plaintiff's allegations of separate acts of harassment by

different coworkers insufficient to state a claim for a hostile work environment).

Accordingly, Plaintiff's Section 1983 claims against Defendants Findley and Houston are dismissed.

### F. Olearchik, Mittiga, Williams

Defendant Olearchik was the Principal of SDL and Defendants Mittiga and Williams were Assistant Principals of SDL (collectively, "SDL Administrators").[13]   Plaintiff alleges that the SDL Administrators, "with discriminatory intent and in retaliation for Plaintiff's opposition to discrimination, and on the basis of Plaintiff's race, color, religion, national origin, . . . coached, manipulated, organized, instructed, and used students against Plaintiff."   *Id.* ¶ 34. Plaintiff particularly takes issue with the fact that the SDL Administrators failed to discipline students whom Plaintiff believes should have been disciplined for mistreating him or otherwise misbehaving.   *Id.* ¶¶ 40, 48, 53, 55, 56.   Plaintiff appears to infer that because school administrators did not take sufficient action against these students the administrators were, in fact, "intentionally and deliberately encourage[ing] students to create [a] hostile, intimidating and scary environment for the Plaintiff."   *Id.* ¶ 48; *see also id.* ¶¶ 34, 37, 40, 49 53.

Plaintiff alleges that Olearchik additionally:   (i) "did not keep his promise of giving Plaintiff all Chemistry classes except one," which "forced Plaintiff to teach out of his license area," *id.* ¶¶ 29–30; (ii) "rated Plaintiff as 'Ineffective' or 'Developing,'" *id.* ¶ 31; (iii) took no action when Plaintiff complained his "team-teachers . . . were not doing their fair share of teaching," but instead "showed favoritism" and "told Plaintiff to do all the work or face dire consequences," *id.* ¶¶ 38–39, 54; (iv) "forced Plaintiff to sign [an] observation report" which he had already signed, *id.* ¶ 46; (v) and removed Plaintiff from the "global e-mail system to keep all

---

[13]      Williams was also a teacher, and one of Plaintiff's "team-teaching partners."   *Id.* ¶ 54.

staff informed about the school and students' suspensions," *id.* ¶ 51.   Even considering these allegations in the light most favorable to Plaintiff, they nevertheless fail to support a reasonable inference that Olearchik's actions would not have occurred *but for* his intent to discriminate against Plaintiff.   *Saez*, 2022 WL 3369737, at *4.

Plaintiff's only other allegation against Defendant Mittiga is that she gave Plaintiff his termination letter, and "informed Plaintiff that a recommendation for Plaintiff's termination was made because of his complaints of discrimination on the basis of his Pakistan[i] descent and Islamic belief."   *Id.* ¶ 59.   Plaintiff does not allege that she was the one who made the recommendation, took part in the recommendation, or agreed with the recommendation.   Nor does Plaintiff allege she had any "decision-making authority with respect to" his termination, *Ahmad*, 2019 WL 3202747, at *5—just that she was the messenger.   This allegation does not plausibly suggest that Mittiga discriminated or retaliated against Plaintiff, and thus fails to allege a violation under Section 1983.

With respect to Williams, Plaintiff alleges that, before he was hired, Williams made Plaintiff "come back for [a] second demo" because of her negative beliefs about Muslims, *id.* ¶ 26.   However, Plaintiff was still hired as a probationary teacher after his demonstration lesson. *Id.* ¶¶ 25–28, 60, 63.   Plaintiff additionally alleges that:   (i) Williams abused "her administrator powers and continued to order/force Plaintiff work during his lunch period," *id.* ¶ 42, and (ii) asked Plaintiff's students questions and then falsely told them their answers were wrong, *id.* ¶ 52.   The Court finds that neither of these alleged actions as an administrator were more "disruptive than a mere inconvenience or an alteration of job responsibilities," *Vega*, 801 F.3d at 85, and Plaintiff never alleges that Williams had any "decision-making authority with respect to"

21

his termination.   *Ahmad*, 2019 WL 3202747, at *5.   In addition, Plaintiff alleges Williams

"made false comments in Plaintiff's formal observation report," *id.* ¶ 45.   Plaintiff, however,

fails to elaborate on what these alleged false comments were, or how they adversely impacted

him in a way that is violative of Section 1983.   Even considering these allegations in the light

most favorable to the Plaintiff, nothing alleged permits the Court reasonably to infer that

Williams's actions would not have occurred *but for* her intent to discriminate against Plaintiff.

Accordingly, Plaintiff's Section 1983 claims against Defendants Olearchik, Mittiga, and

Williams are dismissed.

## IV.   Section 1985

Plaintiff alleges violations of Section 1985.   Specifically, Plaintiff alleges that

"Defendant NYC DOE et al. intentionally conspired and colluded against Plaintiff and created

[a] hostile work environment in the terms, conditions, and privileges of employment in violation

of 42 U.S.C. §1985."   Amend. Compl. ¶ 114.

"To state a cause of action under § 1985, a plaintiff must allege (1) a conspiracy; (2) for

the purpose of depriving a person or class of persons of the equal protection of the laws, or the

equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy;

and; (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a

citizen of the United States."   *Chillemi v. Town of Southampton*, 943 F. Supp. 2d 365, 380–81

(E.D.N.Y. 2013).   "To assert a conspiracy under Section 1985, a plaintiff must [also] provide

some factual basis supporting a meeting of the minds, such that defendants entered into an

agreement, express or tacit, to achieve the unlawful end."   *Masters v. Mack*, No. 22-cv-6582,

2022 WL 17961211, at *6 (E.D.N.Y. Dec. 27, 2022).

Plaintiff has failed to plead any facts to support his conclusory allegation that Defendants acted in concert to deprive him of the equal protections of the law.    Plaintiff provides no factual support to permit the Court reasonably to infer that there was a meeting of the minds between or among Defendants.    *See Sherman v. Yonkers Pub. Sch.*, No. 21-cv-7317, 2023 WL 137775, at *8 (S.D.N.Y. Jan. 9, 2023) ("That Plaintiff's conclusory allegations are aimed at Defendants collectively does not . . . render it plausible that Defendants acted as a collective and with one objective in mind.").    At best, Plaintiff alleges "a number of isolated incidents of discriminatory or otherwise hostile conduct," but such allegations are insufficient to support a claim of conspiracy.    *Ahmad*, 2019 WL 3202747, at *14; *see also Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (finding that "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed").

Accordingly, Plaintiff's Section 1985 claims are dismissed.

## V.    Equal Pay Act

Plaintiff alleges violations of the Equal Pay Act against the DOE.    Specifically, Plaintiff alleges that "Defendant DOE has neither paid Plaintiff's salary for the days he worked as a teacher in the Eagle Academy for Young Men III (29Q327) Queens, nor compensated for the won grievances. The Defendant DOE intentionally violated the [E]qual [P]ay [A]ct of 1963." Amend. Compl. ¶ 134.

"To establish an Equal Pay Act claim, a plaintiff must make an initial showing that (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort and responsibility; and (3) the jobs are performed

under similar working conditions."   *Segal v. City Univ. of New York*, No. 18-cv-4444, 2018 WL 11487597, at *4 (E.D.N.Y. Aug. 22, 2018).   Here, Plaintiff does not allege that the DOE paid different wages to employees of the opposite sex, or that those employees performed equal work on jobs requiring equal skill, effort and responsibility, or that the jobs were performed under similar working conditions.

Accordingly, Plaintiff's Equal Pay Act claims are dismissed.

## VI.   Wiretap Act

Plaintiff alleges that "Defendant DOE's policy about the audio and video recordings of C-31 hearings are not confirming . . . to . . . 18 U.S.C. [§] 2511(2)(d)," also known as the Wiretap Act.   Amend. Compl. ¶ 134.   Plaintiff only brings this claim against the DOE, not any of the individual Defendants.

The Wiretap Act makes it unlawful to "intentionally intercept[], endeavor[] to intercept, or procure[] any other person to intercept" a wire, oral, or electronic communication, or to use the contents of any such communication "knowing or having reason to know that the information was obtained in violation of [the Act]."   18 U.S.C. §§ 2511(1)(a)–(2)(d).   The Wiretap Act allows for civil remedies.   *See* 18 U.S.C. § 2520; *see also Kinchen v. St. John's Univ.*, No. 17-cv-3244, 2019 WL 1386743, at *10 (E.D.N.Y. Mar. 26, 2019), *aff'd sub nom. Kinchen v. Gonzalez*, 830 F. App'x 693 (2d Cir. 2020).   "A *prima facie* case under the Wiretap Act requires showing that the defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device."   *Kinchen*, 2019 WL 1386743, at *10 (emphasis added).

Plaintiff alleges that the DOE violated the Wiretap Act when it "refus[ed] to permit Plaintiff to record [his grievance hearing] on Plaintiff's own recording device."   Amend. Compl. ¶ 71.   Plaintiff does not allege, however, that the DOE intentionally intercepted, or attempted to intercept, any contents of his electronic communications, and therefore, he does not state a *prima facie* case under the Wiretap Act.

Accordingly, Plaintiff's Wiretap Act claim is dismissed.

**VII.   Supremacy Clause**

Plaintiff alleges that "Defendant DOE's policy about the audio and video recordings of C-31 hearings are not conforming, but rebellious, to" "Article VI, Paragraph II of the U.S. Constitution, (the 'Supremacy Clause')."   Amend. Compl. ¶¶ 71, 134; *see also* ECF No. 108 at 32.

The Supremacy Clause "is not the source of any federal rights, and certainly does not create a cause of action."   *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015); *see also Ramsaroop v. Dep't of Educ. of City of N.Y.*, No. 20-cv-4947, 2023 WL 22621, at *11 (S.D.N.Y. Jan. 2, 2023).   Plaintiff has no private cause of action under the Supremacy Clause.   Therefore, to the extent Plaintiff brings a claim against the DOE under the Supremacy Clause, that claim fails.

Accordingly, Plaintiff's claim under the Supremacy Clause is dismissed.

**VIII.   Procedural Due Process Claims**

Plaintiff alleges that the DOE Defendants deprived him of procedural due process. Specifically, Plaintiff alleges that "Defendant NYC DOE et al., terminated Plaintiff's teaching

licenses without a [h]earing in violation of [the] Due Process Clause of the Fourteenth Amendment of the U.S. Constitution." Amend. Compl. ¶ 126.

"To prevail on a procedural due process claim, a plaintiff must demonstrate: (1) that he was deprived of a cognizable interest in life, liberty, or property (2) without receiving constitutionally sufficient process." *Tang v. Grossman*, No. 22-cv-464, 2023 WL 2229366, at *1 (2d Cir. Feb. 27, 2023). When analyzing due process claims, the "threshold issue is whether the plaintiff possessed a valid property or liberty interest." *Cummings v. City of New York*, No. 19-cv-7723, 2021 WL 1163654, at *7 (S.D.N.Y. Mar. 26, 2021), *aff'd*, No. 21-cv-1380, 2022 WL 2166585 (2d Cir. June 16, 2022).

As Plaintiff does not allege that his state teaching certification was ever revoked, the Court understands his allegation that his "teaching licenses" were terminated as referring to the fact that he lost his eligibility to work as a high school chemistry teacher in the City District. The loss of Plaintiff's work authorization was a direct result of him being terminated from his probationary teaching position at SDL, pursuant to the DOE Chancellor's Regulation No. C-205(25)(c). *See* Amend. Compl. ¶¶ 62, 99; *supra* n.2. As Plaintiff still could have pursued employment outside of the City District, all he was deprived of was his probationary position. *See Khan v. City of N.Y.*, No. 159834/2018, NYSCEF Doc. 21 at 4 (N.Y. Sup. Ct. Apr. 18, 2019) (noting that discontinuation of a probationary position and associated license "does not preclude [plaintiff] from obtaining employment within a district other than the district from which his services were discontinued"). "As a probationary teacher, Plaintiff possessed no property right" in his continued employment within that specific district. *Cummings*, 2021 WL 1163654, at *8.

Accordingly, Plaintiff's procedural due process claims are dismissed.

26

## IX.    State Law Claims

Because the Court herein dismisses Plaintiff's federal claims, only Plaintiff's state law

claims of defamation, and violations of the NYSHRL and the NYCHRL remain.    The Court,

however, declines to exercise supplemental jurisdiction over those claims.    "District courts may

use their discretion in deciding whether to exercise supplemental jurisdiction over state law

claims after dismissing a plaintiff's only federal claims, so long as the federal claims were not

dismissed for lack of subject matter jurisdiction."    *Probiv v. PayCargo LLC*, No. 22-cv-2907,

2023 WL 159788, at *5 (E.D.N.Y. Jan. 11, 2023); *see also* 28 U.S.C. § 1367(c)(3) ("The district

courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court

has dismissed all claims over which it has original jurisdiction . . . .").    Accordingly, the Court

declines to exercise supplemental jurisdiction over the state law claims against the Defendants

and dismisses those claims without prejudice.

## X.    Dismissal With Prejudice

Generally, "a *pro se* complaint should not be dismissed without the Court granting leave

to amend at least once when a liberal reading of the complaint gives any indication that a valid

claim might be stated."    *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).    "Nonetheless,

courts may deny leave to replead where amendment qualifies as futile."    *Herbert v. Delta

Airlines*, No. 12-cv-1250, 2014 WL 4923100, at *5 (E.D.N.Y. Sept. 30, 2014).

Here, the Court finds that dismissal of Plaintiff's federal claims with prejudice is

warranted.    As an initial matter, "Plaintiff has not asked for leave to amend as an alternative to

denying the motion to dismiss."    *Goodman v. Goodman*, No. 21-cv-10902, 2022 WL 17826390,

at *21 (S.D.N.Y. Dec. 21, 2022); *see also Cybercreek Ent., LLC v. U.S. Underwriters Ins. Co.*,

696 F. App'x 554, 555 (2d Cir. 2017) ("[Plaintiff's] failure to request leave to amend alone supports the District Court's dismissal with prejudice.").   Additionally, even when taking into account the "special solicitude" that is afforded to *pro se* litigants, "nothing in the record suggests that another complaint could remedy the legal deficiencies." *In re Sibanye Gold Ltd. Sec. Litig.*, No. 18-cv-3721, 2020 WL 6582326, at *21 (E.D.N.Y. Nov. 10, 2020).   Plaintiff chose to file an amended complaint nearly identical to his original complaint even after having seen Defendants' original motions to dismiss and the Court's previous order partially granting those motions.[14]   *See* ECF Nos. 53–68.   Courts have found that dismissal with prejudice is warranted where a party has been granted an opportunity to replead after being made aware of legal deficiencies in the complaint but fails to cure those deficiencies.   *See, e.g.*, *Nunes v. Cable News Network, Inc.*, 31 F.4th 135, 147 n.7 (2d Cir. 2022) (affirming dismissal with prejudice where motion to dismiss filed before complaint had been amended); *Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*, No. 20-cv-1602, 2022 WL 4599203, at *21 (D. Conn. Sept. 30, 2022) (dismissing complaint with prejudice where court had "already granted [plaintiff] leave to amend the deficiencies in its Amended Complaint, which repleading did not cure").   Accordingly, the Court does not grant Plaintiff leave to amend the complaint for a second time and dismisses the federal claims against the Defendants with prejudice.

---

[14]   The Court also notes that Plaintiff filed this legally deficient amended complaint even though he was, or should have been, aware of the correct standard—at least as to his Title VII, ADEA, Section 1981, Section 1983, Section 1985, and due process claims—when the court in *Ahmad v. White Plains*, 2019 WL 3202747—a case in which he was the plaintiff—plainly set forth the necessary elements of these various claims.

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motions to dismiss—

Plaintiff's federal claims are dismissed with prejudice, and his state law claims are dismissed

without prejudice.   The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal

would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of

an appeal.   *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).   The Clerk of Court

is respectfully directed to enter judgment and close this case.

Furthermore, the Clerk of the Court is respectfully directed to mail a copy of this order to

Plaintiff.   In addition, on or before April 14, 2023, the DOE Defendants are directed to send

Plaintiff copies of the unpublished decisions cited herein in accordance with the Second Circuit's

decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) and to submit to the Court at that time

proof of service.

SO ORDERED.


*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge


Dated:   Brooklyn, New York
          March 31, 2023

29